

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-2-2006

# USA v. Staten

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1760

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Staten" (2006). *2006 Decisions.* Paper 969.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/969

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No:  05-1760

UNITED STATES OF AMERICA

v.

LAMAR STATEN, a/k/a Lamont Staten, Lemont Staten

Lamar Staten,
Appellant

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No. 03-CR-295
District Judge:  The Honorable Thomas M. Hardiman

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
Submitted May 8, 2006

Before: BARRY and SMITH, *Circuit Judges*, and DITTER, *District Judge*[*]

(Filed:  June 2, 2006 )

OPINION OF THE COURT

SMITH, *Circuit Judge*.

---

[*]The Honorable John William Ditter, Jr., Senior District Judge for the Eastern District
of Pennsylvania, sitting by designation.

Lamar Staten appeals his conviction on drug and weapons charges, alleging that the District Court erred (1) by denying Staten's request that new counsel be appointed to represent him; (2) by permitting the Government to introduce evidence of a prior conviction for possession with intent to distribute crack cocaine; and (3) by denying his Motion to Suppress Evidence. We will affirm the conviction.

I.

While working undercover on May 21, 2003, Detectives Christopher Wydra, Brock Covington, and Norman Klahre of the Pittsburgh City Police Department observed a gray Buick run two posted stop signs in the Highland Park area of Pittsburgh. The officers initiated a traffic stop. During the traffic stop, Detective Wydra shone a flashlight through the window and windshield from the passenger side of the vehicle, illuminating the passenger, Lamar Staten, and the interior of the vehicle. Wydra observed the handle of a handgun inside Staten's jacket near his waistline. Wydra instructed Staten to exit the vehicle, removed the 9mm semi-automatic handgun from Staten's "right front waist area," and, after ascertaining that Staten had no permit for the weapon, placed him under arrest.

In the course of searching Staten incident to his arrest, Detective Wydra recovered from Staten one clear knotted plastic bag containing a large chunk of crack cocaine and three individually knotted bags of crack cocaine. The crack cocaine weighed 7.432 grams. Staten told the officers that he had found the drugs and gun in a backpack at a nearby bus stop. Upon reaching the bus stop described by Staten, the police searched the

2

area but found no backpack.

As a result of the above events, a grand jury returned a three-count indictment against Staten on December 29, 2003. Count One charged Staten with possession with intent to distribute 5 grams or more of a mixture and substance containing a detectable amount of cocaine base, in the form commonly known as crack, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). Count Two charged Staten with possession of a weapon after a felony conviction in violation of 18 U.S.C. § 922(g)(1). Count Three charged Staten with carrying a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c).

On April 7, 2004, Staten's appointed attorney at the time, Thomas Livingston, filed a motion to suppress the gun and the drugs, alleging that Detective Wydra had illegally searched Staten during the traffic stop, making the evidence resulting from the search inadmissible under the "fruit of the poisonous tree" doctrine. The District Court held a hearing on the motion and, finding the officers' version of the search and surrounding events credible, ruled in favor of the Government.[1]

One week before trial, Staten filed a pro se motion seeking new counsel. During the hearing on the motion, Staten complained of a difference of opinion between himself and counsel concerning plea negotiations and defense strategy. The District Court granted the motion for Livingston to withdraw but warned Staten that the next lawyer

---

[1]The District Court had jurisdiction over this criminal matter under 18 U.S.C. § 3231. We exercise appellate jurisdiction pursuant to 28 U.S.C. § 1291.

3

may well give him the same advice, and that receiving advice with which he disagreed was not grounds for repeated motions to replace counsel. The Court next appointed Joseph Yablonski to represent Staten and postponed the start of the trial.

The day before the next trial date, Yablonski submitted a motion to withdraw as counsel at Staten's request. The Court conducted a hearing on the motion on the day that the trial had been scheduled to begin. In discussions with the Court, Staten complained that Yablonski, *inter alia*, refused to discuss trial strategy with him and was trying to convince him to take a plea; Yablonski responded that the real issue was that Staten wanted Yablonski to relitigate issues that had been decided during the suppression hearing, which, as Yablonski had explained to Staten, he was ethically unable to do. After confirming that Yablonski was still willing to act as an advocate for Staten, the Court postponed the trial again, held the motion to withdraw in abeyance, and counseled Yablonski and Staten to continue to try to reach an accord.

In a subsequent status conference on the attorney-client relationship, Yablonski explained that it was now Staten who was refusing to cooperate with him regarding defense preparation. Staten became agitated and responded by again attempting to address the results of the suppression hearing and criticizing Yablonski for refusing to re-raise those issues. The District Court ultimately decided that there was no good cause to remove Yablonski as counsel:

> In my view here, there is a problem with communication, but it's entirely because of [Staten's] obstreperousness. . . . [Staten] continues to want to relitigate the suppression motion. He has been advised by his first counsel,

4

his current counsel, and now by the Court on two occasions that the suppression issue is not before us.

. . . .

It's clear to me that if I grant [Staten's] pro se motion to remove counsel, that we're going to be in the exact same position again with a third, a fourth, and a fifth counsel.

At trial, Staten presented a defense that his possession of crack cocaine was for his own personal use and that he did not intend to sell it. Therefore, Staten argued, he had no intent to distribute, nor did he use and carry a firearm during and in relation to a drug trafficking crime. Because Staten raised lack of intent as his defense, the Government introduced evidence – pursuant to Federal Rule of Evidence 404(b) and over Staten's objection – that in 2000, Staten was convicted of possessing crack cocaine with intent to distribute and of possessing an unlicensed firearm. At the close of the trial, the District Court issued an instruction to the jury that the evidence of the prior conviction was not itself evidence that Staten was guilty as charged in the current indictment, but rather could be considered only as to Staten's intent or whether his actions were the result of a mistake or accident. After a three-day jury trial the jury found Staten guilty on all counts. Staten timely appealed.

## II.

Staten's argument that the District Court should have removed Yablonski as counsel lacks merit. Although the Sixth Amendment guarantees the right to appointed counsel where a defendant is indigent, that right is "not without limit and cannot be the justification for . . . manipulation of the appointment system." *Fischetti v. Johnson*, 384

F.3d 140, 145 (3d Cir. 2004) (citing *United States v. McFadden*, 630 F.2d 963, 972 (3d Cir. 1980)). In *United States v. Goldberg*, 67 F.3d 1092, 1098 (3d Cir. 1995), we stated that where

> the district court denies the request to substitute counsel and the defendant decides to proceed with unwanted counsel, [this Court] will not find a Sixth Amendment violation unless the district court's "good cause" determination was clearly erroneous or the district court made no inquiry into the reason for defendant's request to substitute counsel.

*Id.*

In our view, the District Court did more than was required in terms of a meaningful inquiry into Staten's reasons for requesting new counsel, and the Court's "good cause" determination was not clearly erroneous. The District Court, after having already granted Staten substitute counsel once, held multiple hearings on Staten's new request, engaging in extended questioning of both Staten and attorney Yablonski. The latter's assertion that the main "communication problem" was Staten's continuing insistence that Yablonski impermissibly attempt to relitigate the suppression issues was confirmed when Staten himself angrily tried to address those issues directly to the Court during the October status conference. The hearing transcripts make clear that any potential breakdown in the attorney-client relationship was owing to Staten's "unilateral decision not to cooperate with court-appointed counsel" on any permissible defense strategy. *United States v. Gibbs*, 190 F.3d 188, 207 n.10 (3d Cir. 1999) (citation omitted). Staten's unilateral decision and general obstreperousness are not grounds for a second substitution of counsel on the eve of trial. The record amply supports the District Court's

6

"good cause" determination.

We also find Staten's arguments against the admission of his prior conviction unavailing.[2] As summarized by this Court in *United States v. Sampson*, 980 F.2d 883, 886 (3d Cir. 1992):

> The trial court must consider two issues when deciding whether to admit prior convictions: first, whether the conviction is logically relevant under Rules 404(b) and 402 to any issue other than the defendant's propensity to commit the crime; second, if relevant, whether under Rule 403 the probative value of the evidence outweighs its prejudicial effect. The trial court has "considerable leeway" in both the Rule 404(b) relevancy determination and the balancing test under Rule 403.

*Id.* (citation omitted). On appeal, Staten argues that the evidence of his prior conviction has no relevance other than to show propensity under Rule 402, or alternatively, that the prejudicial effect of the evidence substantially outweighs its probative value under Rule 403. We reject both arguments.

In the circumstances of this case, the prior conviction evidence is relevant under Rule 404(b) to show Staten's intent. Under the instant indictment, the Government needed to prove specific intent to convict Staten. Furthermore, Staten's primary defense was that he possessed the drugs merely for personal use such that he lacked the requisite intent.[3] Where intent is an essential element of the crime charged, we have reasoned that

---

[2] We review a trial court's admission of evidence of a prior conviction for abuse of discretion. *United States v. Adedoyin*, 369 F.3d 337, 343 (3d Cir. 2004); *United States v. Himelwright*, 42 F.3d 777, 781 (3d Cir. 1994).

[3] Although Staten's defense in this case served to heighten the relevance of the evidence in question, we note that "[t]he parameters of Rule 404(b) are not set by the defense's theory of the case; they are set by the material issues and facts the government must prove

evidence of prior similar conduct is relevant to show intent because "as a matter of logic, it is at least marginally more likely that [defendant acted] *intentionally* if he had previous experience with" the same or similar conduct. *Govt. of Virgin Islands v. Pinney*, 967 F.2d 912, 916 (3d Cir. 1992) (emphasis added); *see also Sampson*, 980 F.2d at 888 (quoting *Pinney*, affirming the above reasoning in the context of a drug case, and adding that "[h]owever improbable [such an] inference may seem," it constituted a link to "'a logical chain of inferences from [the] testimony to a relevant issue,'" no link of which involves an inference that because a defendant "'committed the first [crime] he was more likely to have committed the second as well'").

The prior conviction evidence is also relevant to show the absence of accident or mistake. Upon his arrest, Staten asserted that he had simply found the contraband in a backpack at a bus stop. Staten's attorney also cross-examined Detective Wydra extensively on the circumstances of the officers' unsuccessful search for the backpack at a nearby bus stop, attempting to lend credibility to that aspect of Staten's version of events. Evidence of Staten's prior conviction for possession with intent to distribute, as the District Court pointed out, cast significant doubt on Staten's "accident or mistake" version of events as well as his claimed lack of intent.

Staten's Rule 403 argument also fails. In the context of Rule 403 analysis, we have ruled, along with many of our sister courts of appeals, that "[t]here is no question

to obtain a conviction." *Sampson*, 980 F.2d at 888.

8

that, given a proper purpose and reasoning, drug convictions are admissible in a trial where the defendant is charged with a drug offense." *Sampson*, 980 F.2d at 887. Even if we entertained a modicum of doubt as to the District Court's ultimate decision, a trial court's discretion is exceedingly broad in the context of Rule 403 rulings. Indeed, we have stated that "[i]f judicial self-restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal." *United States v. Jemal*, 26 F.3d 1267, 1272 (3d Cir. 1994) (citation omitted).

Finally, we find no clear error by the District Court in denying Staten's Motion to Suppress Evidence based on its determination that Detective Wydra's testimony was credible. Staten argues that the District Court's factual findings as to whether Detective Wydra could have observed Staten's weapon constitute clear error based on the full suppression hearing record.[4] We disagree. The record is composed, *inter alia*, of the testimony of Detective Wydra regarding his physical position relative to Staten as he shone his flashlight into the car and precisely where the gun was located in Staten's clothing. At bottom, the District Court based its factual determinations and the resulting evidentiary ruling largely on its impression of the credibility of Detective Wydra's testimony as to these key matters, an impression not subject to review by this Court. *See*, *e.g.*, *Govt. of Virgin Islands v. Gereau*, 502 F.2d 914, 921 (3d Cir. 1974) ("a fact-finder's

---

[4]We review the District Court's factual findings during a suppression hearing for clear error. *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002).

determination of credibility is not subject to appellate review").[5] The rest of the

suppression hearing record provides no reason to disturb the Court's reliance on Detective

Wydra's testimony. We find no clear error in the Court's findings.

III.

For the reasons stated above, we will affirm the judgment of the District Court.

---

[5]Even if we assume that trial court credibility determinations could be reviewed or overturned in rare or extraordinary circumstances, *see Dardovitch v. Haltzman*, 190 F.3d 125, 140 (3d Cir. 1999), we conclude that no such circumstances attend this case.