CLAY, Circuit Judge,
dissenting.
The majority is mistaken in its conclusion that there was no Sixth Amendment violation in this case. A fair reading of the record makes clear that Defendant was denied the assistance of counsel at his criminal trial, and therefore his sentence and conviction should be vacated and the case remanded. Because the majority refuses to recognize the district court’s constitutional error, I respectfully dissent.
BACKGROUND
On November 7, 2007, a federal grand jury indicted Defendant with one count of possession with the intent to distribute crack cocaine and one count of possession with the intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1). Defendant, who is uneducated and indigent, requested counsel, and the district court thereafter, on November 16, 2007, appointed attorney Richard E. Zambón to represent Defendant. After initial pleas of not guilty, Defendant pleaded guilty on January 3, 2008 to one count of possession with the intent to distribute crack cocaine in exchange for the government’s promise to dismiss the remaining count. The district court scheduled a sentencing hearing for April 21, 2008.
Over the next few months, the relationship between Defendant and counsel broke down to such a degree that Defendant pleaded with the district court to assign him a new attorney. On April 13, 2008, Defendant filed a pro se motion that requested the appointment of new counsel, as well as permission to withdraw his guilty plea. At a hearing on April 21, 2008, Defendant again requested new counsel, explaining that he and his lawyer “don’t get along” and that his lawyer has failed to adequately represent him by, for example, misinforming him about matters relevant to his guilty plea. The district court did not find good cause for substitution of counsel, and informed Defendant categorically that he was “not going to get another attorney.” The district court did, however, permit Defendant to withdraw his guilty plea, even though the court determined that Defendant’s desire to withdraw his plea was based on a misunderstanding of the law. In considering Defendant’s requests to substitute counsel and withdraw his guilty plea, the district court never suggested that the timeliness of either request was of concern to the court.
The district court did not set a trial date at the hearing on April 21, 2008, but instead gave the government nearly a week to file supplemental documents to establish a prior conviction. On April 25, 2008, the same day the government filed its supplemental documents, the district court issued a scheduling order that set a trial date of May 28, 2008.
On May 8, 2008, Defendant’s counsel filed a motion stating that Defendant wished to proceed without counsel. The district court considered the motion at a hearing on May 16, 2008, during which Defendant again requested new counsel. The court found that Defendant had a fundamental misunderstanding of the law, and therefore dismissed his concerns about his counsel as meritless. The court advised Defendant, that he would not be assigned a new attorney, and presented him with the Hobson’s choice of either proceeding with the counsel he neither desired nor *477 trusted, or proceeding with no counsel at all. Although Defendant answered with continued pleas for new counsel, in direct response to the district court’s leading questions, Defendant stated that he would rather represent himself than be represented by attorney Zambón.
With that, the district court led Defendant blindly down the road to self-representation by summarily converting the proceedings into a Faretta hearing, by which the court sought to extract a knowing and voluntary waiver of counsel. See Faretta v. California, 422 U.S. 806, 835-36, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (holding that prior to permitting a defendant to proceed without counsel, “he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that ‘he knows what he is doing and his choice is made with eyes open’ ”) (internal quotation marks and citation omitted). Concluding that Defendant “has knowingly and intelligently and voluntarily waived his right to counsel,” the district court permitted counsel to withdraw, but ordered that Defendant’s original counsel remain as standby counsel.
Defendant, now proceeding without counsel, appeared at a pretrial conference on May 27, 2008, and complained that he had been “forced to represent myself.” The district court summarily dismissed Defendant’s contention. The case proceeded to trial on May 28, 2008, during which Defendant again complained that he did not have an attorney. On May 29, 2008, a jury found Defendant guilty of both counts charged in the indictment. On August 11, 2008, following a hearing in which Defendant remained unrepresented by counsel and objected on that basis, the district court sentenced Defendant to 360 months of imprisonment.
DISCUSSION
No fair reading of the record suggests that Defendant ever desired to represent himself, and as is clear from the trial transcript, he was neither prepared nor equipped to do so. This is not surprising; as the late Justice Frank Murphy once explained:
The constitutional right to assistance of counsel is a very necessary and practical one. The ordinary person accused of crime has little if any knowledge of law or experience in its application. He is ill prepared to combat the arsenal of statutes, decisions, rules of procedure, technicalities of pleading and other legal weapons at the ready disposal of the prosecutor. Without counsel, many of his elementary procedural and substantive rights may be lost irretrievably in the intricate legal maze of a criminal proceeding. Especially is this true of the ignorant, the indigent, the illiterate and the immature defendant.
Canizio v. People of the State of New York, 327 U.S. 82, 87, 66 S.Ct. 452, 90 L.Ed. 545 (1946) (Murphy, J., dissenting). Given the severity of the felony charges against Defendant, one of which carried a possible life sentence, the district court’s conduct fell below that which would be expected in the face of pleas for assistance from the court for appointment of substitute counsel. See Johnson v. Zerbst, 304 U.S. 458, 462, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (stating that the right to counsel is “one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty”).
The Sixth Amendment guarantees a criminal defendant the right to the assistance of counsel. See, e.g., Kansas v. Ventris, 556 U.S. 586, 129 S.Ct. 1841, 1844-45, 173 L.Ed.2d 801 (2009). Although an indigent defendant under our case law does not have a right to counsel of choice, the *478 Sixth Amendment requires the substitution of appointed counsel upon a showing of good cause. See United States v. Iles, 906 F.2d 1122, 1130-31 (6th Cir.1990).
We review the denial a motion to substitute appointed counsel for an abuse of discretion. See, e.g., United States v. Mooneyham, 473 F.3d 280, 291 (6th Cir. 2007); Wilson v. Mintzes, 761 F.2d 275, 287 n. 20 (6th Cir.1985); Morton v. Foltz, 782 F.2d 1042 (6th Cir.1985) (per curiam) (table). As the majority recognizes, a reviewing court should consider the following factors in determining whether the denial of a request for substitute counsel is an abuse of discretion:
(1) the timeliness of the motion, (2) the adequacy of the court’s inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public’s interest in the prompt and efficient administration of justice.
United States v. Mack, 258 F.3d 548, 556 (6th Cir.2001).
In this case, based on the application of these factors, we should find that the district court committed a clear error of judgment in denying Defendant’s motion to appoint substitute counsel. Recognizing that a district court has wide discretion in this regard, it is clear, based on the record, that no reasonable application of these factors would support the majority’s decision to affirm the decision of the district court. I now turn to the factors.
A. Timeliness of the motion
The majority simply concludes that the timeliness of Defendant’s motion to substitute counsel “does not lend strong support to either Marrero’s claim or the district court’s decision.” (Maj. Op. at 464.) As explained below, the majority’s imprecise and equivocal conclusion finds little support in the record.
This is not a case where Defendant sought to substitute counsel on the eve of or during trial. Cf. United States v. Orris, 86 Fed.Appx. 82, 88 (6th Cir.2004) (finding that the district court did not abuse its discretion in denying a motion to substitute counsel on the last day of trial). Nor is this a case where Defendant made a second or successive motion for new counsel after the district court previously appointed substitute counsel. Cf. United States v. Staten, 181 Fed.Appx. 151, 154 (3d Cir.2006) (affirming denial of request to substitute counsel, where district court had “already granted [the defendant] substitute counsel once”); United States v. Davis, 181 F.3d 104 (6th Cir.1999) (table) (denying request to substitute counsel, where the defendant claimed an “irreconcilable conflict with his third appointed attorney”).
Instead, this is a case where the district court’s actions suggest that Defendant’s request for a new lawyer was not untimely. No trial date had been set. The district court granted Defendant’s contemporaneous motion to withdraw his guilty plea, and provided the government nearly a week to file supplemental documents, at which point the district court then issued a scheduling order setting a trial date for May 28, 2008. To the extent the majority is correct in observing that Defendant “did seem to belatedly convey his dissatisfaction with” his counsel to the district court, (Maj. Op. at 464-65), such a fact should have no bearing on our analysis because the district court never raised any concerns about the timeliness of Defendant’s request for new counsel.
To the contrary, the district court’s contemporaneous decision to grant Defen *479 dant’s motion to withdraw his guilty plea suggests that Defendant’s motion to substitute counsel was not untimely. Timeliness is an important factor in determining whether to permit withdrawal of a guilty plea, see United States v. Selva, 43 F.3d 1473 (6th Cir.1994) (table), yet the district court gave no indication that timeliness was a concern in that regard. The court simply reasoned that if Defendant “wants the benefit of having a trial, we are going to give him one.” There is no reason why timeliness would weigh against Defendant’s motion to substitute counsel when it did not weigh against his contemporaneous motion to withdraw his plea.
Accordingly, the timeliness of Defendant’s motion to substitute counsel weighs in his favor.
B. Adequacy of the district court’s inquiry
The district court’s inquiry into the factual basis for Defendant’s request for a new lawyer was inadequate, and the majority’s finding to the contrary is flawed. Although the district court inquired into the initial source of the conflict, and perhaps, as the majority states, allowed Defendant to “go on at length about his differences of opinion with [his then-counsel] as to his plea bargain,” (Maj. Op. at 465-66), the district court did not take the additional and critical step of exploring whether the attorney-client relationship had broken down due to a complete lack of trust and confidence. To the extent the district court purported to engage in an independent inquiry, its inquiry was of questionable value because the court seemed to rely heavily on the statements of Defendant’s former counsel without also properly considering the surrounding circumstances and contentions of Defendant. The evidentiary value of the statements of Defendant’s former counsel are suspect in this case because Defendant disputed the quality of his former counsel’s legal representation and specifically stated that he and his attorney had a “conflict from the day we started.”
The district court never considered whether Defendant might have better understood the law had it been explained to him by a lawyer who may have been able to establish some measure of effective communication with Defendant, or with whom he may have been able to develop trust and confidence. The court failed to make sufficient inquiry into the working relationship between attorney and client; whether the apparent collapse of this relationship was exacerbated by factors unrelated to Defendant’s apparent misunderstanding of the law; and whether the collapse of the relationship, whatever the source, affected Defendant’s ability to mount an adequate defense. See, e.g., United States v. Adelzo-Gonzalez, 268 F.3d 772, 777 (9th Cir.2001) (“Before ruling on a motion to substitute counsel ..., a district court must conduct such necessary inquiry as might ease the defendant’s dissatisfaction, distrust, and concern.”) (internal quotation marks and citation omitted). Instead of exploring these important questions, and the reasons for any lack of rapport between attorney and client, the district court summarily converted the proceeding into a Faretta hearing in which it marched Defendant unknowingly down the road to self-representation, where Defendant would be forced to confront significant and complex criminal charges without an attorney to represent him.
Although Defendant stated at various times that he wished to proceed without counsel, these statements were in direct response to well-articulated, leading questions posed by the district court in an apparent effort to extract Defendant’s *480 waiver of his right to counsel. Any purported acquiescence to proceeding pro se was extracted by the district court only after the district court presented Defendant with a false choice of either: 1) proceeding with the counsel he did not desire or trust; or 2) proceeding without any counsel at all. Cf. United States v. Namer, 149 Fed.Appx. 385, 394-95 (6th Cir.2005) (noting that in response to a defendant’s request to substitute counsel, the district court fashioned a “reasonable compromise” by elevating a second chair counsel to first chair, but keeping the objectionable lawyer on the case).
Even after Defendant selected the latter choice simply to rid himself of counsel he regarded as unsatisfactory and deficient, he continued to protest “that what I really wanted is a new attorney.” (5/16 Hear’g Tr. at 21.) The prosecutor apparently recognized this as a problem, stating, “Your Honor ... I have some concerns about what he is really asking for. He’s mentioned at least three times now that he wants a new attorney.” (Id.) Although we have held that “by rejecting all [ ] options except self-representation,” a defendant “necessarily [chooses] self-representation,” King v. Bobby, 433 F.3d 483, 492 (6th Cir.2006) (petition for writ of habeas corpus), this rule cannot apply in a case where, as here, the district court abused its discretion by unreasonably limiting a defendant’s options.
Accordingly, the district court’s inquiry into the matter was woefully inadequate and misleading. This factor thus weighs in favor of Defendant.
C. Extent of conflict between attorney and client preventing an adequate defense
The extent of the conflict between Defendant and counsel was significant, and this factor weighs in Defendant’s favor. Although the record should have been better developed, the record that does exist reveals a complete breakdown of the attorney-client relationship. See, e.g., United States v. Jennette, 387 Fed.Appx. 303, 307-08 (4th Cir.2010) (finding an abuse of discretion, where district court denied a motion to substitute counsel two weeks before sentencing in the face of a breakdown in communication between lawyer and client). This is evident from Defendant’s statements to the district court,[1] as well as those of his then-attorney.[2]
The magnitude of the conflict is further evidenced by Defendant’s decision to entirely forgo representation rather than be represented by his then-counsel, even though Defendant was admittedly ignorant of the law and desired a lawyer. See United States v. Lagunas, 48 F.3d 1229 (9th Cir.1995) (table) (finding an abuse of discretion, where court denied substitution even though the “evidence established a breakdown in communication that made, an adequate defense highly improbable, if not *481 impossible”). Although Defendant was permitted the opportunity to consult his former counsel as standby counsel at trial and sentencing, this is at most marginally relevant to the present issue. Defendant was not permitted any choice in the selection of his standby counsel, nor does the record suggest that Defendant and standby counsel had a meaningful or productive relationship. They instead continued to have a conflicted relationship compelled by the district court.
D. Public interest in the prompt and efficient administration of justice
The final factor is the prompt and efficient administration of justice. This factor weighs in Defendant’s favor. The majority does not disagree, but again, as with its analysis of the timeliness issue, the majority provides an imprecise evaluation of the issue, stating simply that the factor “is, at most, equivocal, and perhaps even favors Marrero.” (Maj. Op. at 467.) Such an ambiguous conclusion is supported by neither the record nor common sense. In fact, the majority’s reasoning suggests that this factor weighs in Defendant’s favor even though the majority is loathe to admit as much.
As an initial matter, substitution of counsel when it was requested would not have caused any meaningful delay. Defendant first requested a new lawyer on April 13, 2008, nearly two weeks before the district court would issue a scheduling order on April 25, 2008 for trial on May 28, 2008. Although the district court did not relieve counsel until two weeks before trial, if two weeks were sufficient for an uneducated defendant, proceeding pro se, to prepare for trial, then a new attorney certainly would have been able to prepare within that time frame as well. If this were not the case, the district court’s way of proceeding would raise serious constitutional questions about whether the district court provided Defendant sufficient time to prepare his defense.
Even if substitution of counsel would have resulted in meaningful delay, the record does not suggest that any such delay would have prejudiced the relevant public interest: no trial date had been scheduled; the court permitted Defendant to withdraw his plea of guilty; and the court adjourned proceedings for nearly a week to permit the government to file supplemental papers. The record likewise does not suggest any prejudice whatsoever to the government. Cf. United States v. Sullivan, 431 F.3d 976, 982 (6th Cir.2005) (affirming denial of request to substitute counsel that was filed “after the Government had presented the testimony of forty-two witnesses and had rested its case, and after the district court had denied [a] motion for judgment of acquittal”).
To the extent that the relevant public interest is implicated, it weighs in Defendant’s favor. If the district court had appointed substitute counsel, the public would have benefitted from the efficiencies inherent in a trial where both parties are represented by counsel. See, e.g., United States v. Bertoli, 994 F.2d 1002, 1018 (3d Cir.1993) (recognizing “the possibilities of delay and confusion that are inherent in a pro se trial”). Substitution of counsel might also have abrogated the need for appeal of this issue. See, e.g., Ebrahimi v. City of Huntsville Bd. of Educ., 114 F.3d 162, 167 (11th Cir.1997) (noting the courts of appeals’ interest in judicial efficiency, particularly because “the caseload of the federal courts of appeals has grown faster than that of any other component of the federal judiciary”).
Accordingly, the public interest in the expeditious administration of justice was not aided by the district court’s denial of *482 substitution of counsel in this case. This factor weighs heavily in Defendant’s favor.
E. Weighing the relevant factors for abuse of discretion
Although the Sixth Amendment does not guarantee an indigent defendant the right to counsel of choice, see Mooneyham, 473 F.3d at 291, a straight forward application of the factors discussed above should compel the conclusion that the district court abused its discretion in denying substitution of counsel, thus depriving Defendant of his Sixth Amendment right to counsel. See, e.g., United States v. Bell, 516 F.3d 432, 445 (6th Cir.2008) (noting that the abuse of discretion standard does not deprive this Court of meaningful appellate review even in areas of “substantial deference”).
Any fair reading of the record makes clear that the district court committed a clear error of judgment in denying Defendant’s motion to substitute counsel. This is not merely because the district court misapplied the law. Rather the district court so unreasonably and egregiously misapplied the law that its decision cannot be excused even under our most deferential standards of review.
Since the deprivation of the right to counsel in violation of the Sixth Amendment is a “structural error,” we presume prejudice and should set aside Defendant’s conviction and sentence on this basis. See, e.g., United States v. Gonzalez-Lopez, 548 U.S. 140, 152, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006).
CONCLUSION
For the reasons discussed above, Defendant’s conviction was obtained in violation of the Sixth Amendment. Because the majority erroneously concludes to the contrary, I respectfully dissent.[3]

. (See, e.g., 5/16 Hear’g Tr. at 3 ("He hasn't been doing anything for me.”); id. at 8 ("You know what — Excuse me, I ask you for the new attorney.... And see he — Me - and him, we got a conflict in every point, so if I have a conflict on every point with my attorney, so I don’t see how I can go in trial and be properly represented while me and my attorney we have a conflict from the day we started, so that’s not fair.”); id. at 11 ("I never want to plea bargain. [My lawyer] knows since the beginning me and him we argue from the date that we were talking about that. I want to take it to trial no matter what.”); 4/21 Hear'g Tr. at 20 (”[M]e and him we don't get along and everything. We see — we always see for different points of view.”).)

. (See, e.g.,.5/16 Hear’g Tr. at 2 (stating that Defendant was "suffice it to say, unhappy with my strategy, my plans for trial,” and would rather represent himself than continue with his current counsel).)

. Because a finding of a Sixth Amendment violation would require us to reverse Defendant’s conviction, this dissent does not reach the other claims of error raised on appeal and rejected by the majority, other than to note, with regard to Defendant’s challenge to his sentence, that the district court appears to have committed serious procedural error. It is undisputed that the district court failed to insure that Defendant was provided with the pre-sentence report "at least 35 days before sentencing" as required by Rule 32(e)(2) of the Federal Rules of Criminal Procedure. Defendant objected on this basis at the sentencing hearing, and the district court recognized the error, but proceeded with the hearing anyway. (See Sentencing Tr. at 7.) The district court thereafter stated that Defendant's ignorance of federal sentencing law was "one of the hazards of representing yourself.” Perhaps so, but the district court's non-compliance with the Federal Rules of Criminal Procedure should not also be such a hazard.