UNITED STATES of America

v.

Harvey SAMPSON and Rose Sampson

Harvey Keith Sampson, Appellant.

No. 92–3096.

United States Court of Appeals,
Third Circuit.

Argued Sept. 16, 1992.

Decided Nov. 27, 1992.

884

Michael R. Cauley (argued), Yochim, Skiba, Moore & Nash, Erie, Pa., for appellant.

Thomas W. Corbett, Jr., U.S. Atty., Michael L. Ivory (argued), Asst. U.S. Atty., Paul J. Brysh, Pittsburgh, Pa., for U.S.

Before STAPLETON, SCIRICA and NYGAARD, Circuit Judges.

OPINION OF THE COURT

NYGAARD, Circuit Judge.

Harvey K. Sampson appeals his conviction for marijuana possession. The question on appeal is whether the district court properly admitted two prior drug convictions into evidence under Federal Rules of Evidence 404(b) and 403. We conclude that it did not, and so will reverse and remand for a new trial.

## I.

Before this conviction, Sampson was convicted in Pennsylvania of conspiracy and possession with intent to distribute cocaine and a related firearm offense. His wife was convicted as a coconspirator. Sampson was also convicted in Michigan of possession with intent to distribute marijuana.

While he was serving a twelve year sentence at a federal prison for the Pennsylvania conviction, Sampson and his wife were indicted for marijuana possession under 21 U.S.C. § 844(a), and possession with intent to distribute under 21 U.S.C. § 841(a)(1). She pleaded guilty, but he pleaded not guilty.

Before trial, the government requested the district court to rule on the admissibility of Sampson's two drug convictions. It argued that the Michigan drug conviction was admissible because that offense was "of the similar nature to the controlled substances as charged in the instant case (i.e. marijuana)"; that the Pennsylvania drug conviction was admissible because it shows that the same parties, husband and wife, were once again involved in a drug matter; and that the Pennsylvania conviction demonstrates a concert of action between Sampson and his wife and tends to establish that this was part of a plan or scheme, refuting an accident or mistake defense. At the pre-trial hearing, the government reiterated that the convictions were "relevant and admissible in this case because they show not only one of those exceptions, but I am advocating more than one, intent, motive, scheme, a plan, a design, and certainly shows familiarity of the parties, obviously, and background of the charges."

The district court found the evidence admissible, concluding, "I am inclined to think that this is the kind of incident which does fall within the purview of the exceptions listed in 404(b). So I am going to permit it with respect to the two drug convictions, but not with respect to the rifle or gun or whatever it was."

Trial evidence established that on February 1, 1991, Sampson telephoned his wife from prison. This call was monitored and in it she said, "Got that for you today." Sampson replied, "All right." A few minutes later:

Harvey: "So what color you gonna use?"
Rose: "Yellow."
Harvey: "Okay, that'll work."

The next day she visited her husband for about 6 hours. Before seeing her husband, she was subjected to a limited search. Her outer garments were removed, but her inner garments, including pockets, were not searched. The two were then allowed to spend the entire visit in the visiting area where some physical contact was permitted. The visiting area has a number of vending machines, and inmates are permitted to share food during visits. After the visit, Sampson, following prison policy, was strip searched.

The next day Federal Correctional Officer Christopher Fusco searched Sampson's vacant cell. In a standard issue green prison jacket that Sampson used and which was hanging on the rack closest to Sampson's bed, Fusco discovered three yellow balloons. The balloons, tied off at the tip, were badly stained, stunk of feces, and were later found to contain marijuana. During an interrogation by an FBI agent, Sampson admitted that the jacket was his, but denied knowing the balloons were in it. He also denied that his wife gave him drugs during her visit.

The government based its case upon circumstantial evidence. It suggested that the recorded conversation planned a drug transaction using something that was yellow. Officer Fusco testified that he believed these balloons were ingested, passed

in the privacy of the showers, and then hidden in the jacket pocket. Another officer testified that brightly colored balloons are often used to smuggle contraband into prisons because they will "blend in with the food items," making it difficult for supervising officers to "identify the difference between a balloon and a Frito chip or a yellow M & M." Sampson did not testify at trial. His defense was to imply the possibility that the balloons had been planted by another inmate.

A jury found Sampson guilty, and the district court sentenced him to a nine month term of incarceration. Sampson appeals, contending that the district court erred under Federal Rules of Evidence 404(b) and 403 when it admitted his drug convictions into evidence.

## II.

■ The trial court must consider two issues when deciding whether to admit prior convictions: first, whether the conviction is logically relevant under Rules 404(b) and 402 to any issue other than the defendant's propensity to commit the crime; second, if relevant, whether under Rule 403 the probative value of the evidence outweighs its prejudicial effect. The trial court has "considerable leeway" in both the Rule 404(b) relevancy determination and the balancing test under Rule 403. 2 Weinstein & Berger, Weinstein's Evidence, ¶ 404[12] at 404–75 (1992). We review for an abuse of discretion. *United States v. Traitz*, 871 F.2d 368, 389 (3d Cir.1989).

## A.

■ Rule 404(b), the basic rule governing the admissibility of character evidence, provides:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

This rule is inclusive, not exclusive, and emphasizes admissibility. *Government of Virgin Islands v. Edwards*, 903 F.2d 267, 270 (3d Cir.1990) (citing *United States v. Scarfo*, 850 F.2d 1015, 1019 (3d Cir.1988)).

The Supreme Court gives four guidelines on the admissibility of prior bad act evidence: (1) the evidence must have a proper purpose under Rule 404(b); (2) it must be relevant under Rule 402; (3) its probative value must outweigh its prejudicial effect under Rule 403; and (4) the court must charge the jury to consider the evidence only for the limited purpose for which it is admitted. *Huddleston v. United States*, 485 U.S. 681, 691–92, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988).

Character evidence is not rejected because it is irrelevant. On the contrary, "it is said to weigh too much with the jury and to so overpersuade them as to prejudice one with a bad general record and deny him a fair opportunity to defend against a particular charge." *Michelson v. United States*, 335 U.S. 469, 475–76, 69 S.Ct. 213, 218, 93 L.Ed. 168 (1948). The government knows this, and we do too. Although the government will hardly admit it, the reasons proffered to admit prior bad act evidence may often be potemkin village, because the motive, we suspect, is often mixed between an urge to show some other consequential fact as well as to impugn the defendant's character.[1]

---

1. Indeed, we discern from the record that the government tiptoed around the fringes of the forbidden when in its rebuttal it argued:
   Why would this man take the risk? I want you to consider why would he take the risk. You mean—you are telling me about Harvey Sampson, the man that [sic] took the risk in 1986, who was convicted with possession with intent to distribute, that type of man; the man who took the risk when his daughter was still his daughter in '86, still his daughter now. You mean the same man that [sic] took the risk that in 1987 in this Western District of Pennsylvania, took the risk and was convicted of conspiracy with the possession of marijuana, of, excuse me, cocaine, and possession of cocaine, that man. Is that man we are talking about willing to take a risk? That is what he wants you to consider.

■ Hence, where the evidence only goes to show character, or that the defendant had a propensity to commit the crime, it must be excluded. Where, however, the evidence also tends to prove some fact besides character, admissibility depends upon whether its probative value outweighs its prejudicial effect. *Government of Virgin Islands v. Harris*, 938 F.2d 401, 419 (3d Cir.1991).[2]

There is no question that, given a proper purpose and reasoning, drug convictions are admissible in a trial where the defendant is charged with a drug offense. See for example, *United States v. Simon*, 842 F.2d 552, 553–54 (1st Cir.1988) (drug conviction admissible to show intent and knowledge that package defendant carried contained drugs and not books); *United States v. Terry*, 702 F.2d 299, 316 (2d Cir. 1983) (20 year drug conviction admissible to show intent and knowledge that telephone conversation concerned drugs and not gambling); *United States v. Wright–Barker*, 784 F.2d 161, 175 (3d Cir.1986) (presence on vessels in which drugs were hidden admissible to show absence of mistake in prosecution for violation of drug laws in high sea); *United States v. Percy*, 765 F.2d 1199, 1204 (4th Cir.1985) (prior drug transactions admissible to show that defendant's acts were "not inadvertent, accidental, unintentional or without guilty knowledge"); *United States v. Logan*, 949 F.2d 1370, 1379–80 (5th Cir.1991) (state conviction for growing marijuana admissible to show intent, knowledge, and absence of mistake in prosecution for drug conspiracy); *United States v. French*, 965 F.2d 67, 73–74 (6th Cir.1992) (drug transactions admissible in prosecution for drug possession and conspiracy); *United States v. Chaidez*, 919 F.2d 1193, 1202–03 (7th Cir.1990) (10 year old drug conviction pertaining to transactions unrelated to the charge admissible since defendant denied knowingly possessing drugs); *United States v. Haynes*, 881 F.2d 586, 590 (8th Cir.1989) (operation of "weed house" admissible to show knowledge and intent in prosecution for operation of "crack house"); *United States v. Rocha*, 553 F.2d 615, 616 (9th Cir.1977) (evidence of prior transportation of marijuana, which resulted in acquittal, admissible to show intent in prosecution for possession of marijuana with intent to distribute); *United States v. Poole*, 929 F.2d 1476, 1481 (10th Cir.1991) (cocaine sale was admissible to show defendant knew that cocaine was being sold at his restaurant and that he intended to distribute it); *United States v. Jones*, 913 F.2d 1552, 1566 (11th Cir.1990) (cocaine sale admissible to show intent to sell in prosecution for conspiracy and possession of cocaine with intent to distribute).

■ If the government offers prior offense evidence, it must clearly articulate how that evidence fits into a chain of logical inferences, no link of which can be the inference that because the defendant committed drug offenses before, he therefore is more likely to have committed this one. In *United States v. Rubio–Estrada*, 857 F.2d 845 (1st Cir.1988), police officers searched the defendant's house and seized a ledger of sales transactions, an electronic scale, white powder, and 125 grams of cocaine. The defendant was charged with cocaine possession with intent to distribute. His main defense at trial was that he did not know that cocaine was in his house. He contended that the district court erred when it admitted evidence of his prior conviction for cocaine possession and distribution. The Court of Appeals for the First Circuit held that the evidence was relevant to show knowledge and intent, but it then carefully articulated a complete chain of legitimate inferences to be drawn from the prior conviction. It concluded that these legitimate inferences made the evidence relevant, and could persuade a reasonable jury to believe that it is "logically somewhat more likely that defendant did know about the cocaine in his house and did

---

**2.** "The truth is, this part of our law is an anomaly. Although, logically speaking, it is quite clear that an antecedent bad character would form quite as reasonable a ground for the presumption and probability of guilt as previ-

ous good character lays the foundation of innocence, yet you cannot, on the part of the prosecution, go into evidence as to character." *Michelson*, 335 U.S. at 476 n. 9, 69 S.Ct. at 218 n. 9 (citation omitted).

intend to distribute it than one who did not have a prior conviction." *Id.* at 848.

In *Government of Virgin Islands v. Pinney*, 967 F.2d 912 (3d Cir.1992), Pinney was charged with aggravated rape. The victim testified that when she was seven years old, Pinney raped her in his apartment. The district court allowed the testimony of the victim's sister, who testified that six years earlier Pinney also raped her in the same apartment when she was six years old. We reasoned that the evidence of a prior rape, albeit six years old, was relevant to show intent because "as a matter of logic, it is at least marginally more likely that he did so intentionally if he had previous experience with intercourse." *Id.* at 916. However improbable this inference may seem, it was a link to "a logical chain of inferences from Jamila's testimony to a relevant issue and no link in that chain involves an inference that because Pinney committed the first assault he was more likely to have committed the second as well." *Id.*

Thus, the burden on the government is not onerous. All that is needed is *some* showing of a proper relevance. Whereupon the trial court must judge the government's proffered reason, the potential for confusion and abuse, and the significance of the evidence, and decide whether its probative value outweighs its prejudicial effect.

■ Sampson contends that because his defense was ignorance of the drugs in his jacket, motive, intent and knowledge were not at issue and hence the evidence is irrelevant to these purposes. We disagree. Issues are not irrelevant just because the defense's theory presupposes them to be so. The parameters of Rule 404(b) are not set by the defense's theory of the case; they are set by the material issues and facts the government must prove to obtain a conviction.

■ The government must therefore proffer a logical chain of inference consistent with its theory of the case. The district court, if it admits the evidence, must in the first instance, rather than the appellate court in retrospect, articulate reasons why the evidence also goes to show something other than character. Unless the reason is apparent from the record, a mere list of the purposes found in Rule 404(b) is insufficient. The district court must put a chain of inferences into the record, none of which is the inference that the defendant has a propensity to commit this crime.

■ The district court failed to do so and, hence, it erred. It only said that the evidence "fall[s] within the purview of the exceptions listed in 404(b)." This conclusion may have been sufficient had the government thoroughly explained its basis for admission, because we could then infer that the district court adopted the government's proffered reason. But the government did not do this. It essentially recited, as it does on appeal, the litany of "knowledge, intent, absence of mistake, etc." without explaining how that evidence relates to the recited purposes. That is not enough. Relevance is not an inherent characteristic, *Huddleston*, 485 U.S. at 689, 108 S.Ct. at 1501; nor are prior bad acts intrinsically relevant to "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake." Relevance is a relationship between the evidence and a material fact at issue which must be demonstrated by reasonable inferences that make a material fact more probable or less probable than it would be without the evidence.

We note also that the district court gave the following precautionary instruction:

Now you heard testimony regarding the defendant's prior convictions for drug offenses. You may not consider the defendant's prior convictions as evidence tending to establish a tendency to commit the offense with which he is charged in this case. In other words, you may not infer because the defendant was convicted of drug offenses in the past it is any more likely that he committed the offense charged in the indictment. You may consider the defendant's prior convictions only as they relate to proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or

absence of mistake or accident, and not for any other purpose.

■ This instruction does not cure the error. Where the government has not clearly articulated reasons why the evidence is relevant to any legitimate purpose, there is no realistic basis to believe that the jury will cull the proper inferences and material facts from the evidence. By simply repeating the entire litany of permissible theories under Rule 404(b), the judge's instruction gave the jury inadequate guidance. It also failed to limit the government to the theories it proffered in support of admission of the evidence. Accordingly, where the government has offered one or more permissible theories under which the jury may consider the prior offense, the trial judge should instruct the jury that it may only consider the prior offense in support of those theories.

### B.

■ Moreover, even if we could conclude that the government's bare-bones litany of purposes from Rule 404(b) showed a proper purpose, we cannot affirm because the trial court must still determine whether the evidence's probative value outweighs its prejudicial effect under Rule 403. *United States v. Echeverri*, 854 F.2d 638, 644 (3d Cir.1988). This determination lies within the broad discretion of the trial court. When a court engages in a Rule 403 balancing and articulates on the record a rational explanation, we will rarely disturb its ruling. *Government of Virgin Islands v. Harris*, 938 F.2d 401, 420 (3d Cir.1991). Where, however, the court failed to perform this analysis, or where its rationale is not apparent from the record, there is no way to review its discretion. See *Pinney*, 967 F.2d at 918.

The record does not disclose a Rule 403 balancing. Although the district court excluded Sampson's prior firearm conviction, we will not infer from this that it conducted the Rule 403 analysis on the other convictions. This case is similar to *Pinney*, where we reversed a conviction because "the trial court did not explain why it was denying defendant's motion under Rule 403

and the reason for doing so is not otherwise apparent from the record." *Id.*

### III.

■ In sum, we are not holding that the evidence of Sampson's prior drug convictions is not relevant to a proper purpose. We simply hold that a legitimate relevance has not been properly demonstrated and that the record does not show that the court conducted a Rule 403 balancing. In the new trial, if the government again tries to introduce the evidence, it must carry the burden of proffering a rational chain of inferences and the district court must then evaluate the given reasons in the context of the developing case and give the rationale for its ruling. We will reverse and remand for a new trial.