NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-2429
_____

UNITED STATES OF AMERICA

v.

HENRY JONES,
a/k/a Diddy


Henry Jones,
                    Appellant


_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 06-cr-00048)
District Judge: Honorable Maurice B. Cohill, Junior
_____

Submitted Under Third Circuit LAR 34.1(a)
May 19, 2010

Before: FUENTES, HARDIMAN and NYGAARD, *Circuit Judges*.

(Filed: May 21, 2010)


_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Henry Jones appeals his judgment of conviction. We will affirm.

I.

Because we write exclusively for the parties, we recount only the essential facts. In 2005, officers of the Springboro, Pennsylvania police department began investigating a crack cocaine distribution ring operating in their town. Officers suspected that the group was led by Jerome "Boo" Morrow and included Boo's sister, Jennia "Gwen" Morrow, and the appellant, Henry "Diddy" Jones.

To aid their investigation, police recruited a confidential informant, James MacLaren, who had previously obtained crack from the group. Through Gwen, MacLaren arranged to purchase two ounces of crack from Boo on February 28, 2006. That evening, MacLaren, who was wearing a wire, drove with Gwen to Jones's home in Springboro. Officers observed Jones walk from Boo's nearby house to MacLaren's vehicle, where Jones handed Gwen a bag containing crack cocaine.

Gwen immediately realized that Jones had not delivered the agreed-upon amount of crack and called Boo to request more. Jones quickly reappeared with a second bag. After MacLaren questioned the weight of this second delivery as well, Gwen told him that Jones frequently stole Boo's crack and had likely skimmed some for himself. Several days later, MacLaren reiterated his complaint to Gwen in a telephone conversation recorded by the police. Gwen, however, merely repeated her belief that Jones took some

2

of the crack, explaining that although Boo had confirmed the bags of crack were closed when he gave them to Jones, the bags were open when Gwen and MacLaren received them.

In August 2006, a federal grand jury returned a two-count indictment against Boo, Gwen, and Jones. Count One charged the trio with conspiracy to possess with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. § 846. Count Two charged the group with possession with intent to distribute and distribution of five grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1). All three pleaded not guilty. Following a one-day trial, a jury convicted the defendants on all counts. After the District Court sentenced Jones to 63 months imprisonment, he appealed.[1]

II.

A.

Jones first attacks the sufficiency of the evidence supporting the jury's guilty verdict. We apply a highly "deferential standard in determining whether a jury's verdict rests on sufficient evidence." *United States. v. Ozcelik*, 527 F.3d 88, 93 (3d Cir. 2008). Reviewing the evidence in the light most favorable to the Government, we will uphold the jury's verdict unless no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. (citations omitted). Jones thus "bears a very

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1).

3

heavy burden" to establish that the Government's evidence was insufficient. *Id*. (internal quotation marks omitted).

Jones first contends the Government failed to prove that he knowingly joined the conspiracy, arguing that the evidence showed only that he was a mere acquaintance of the Morrows who ran occasional errands for Boo. Contrary to Jones's protestations, the evidence that he knowingly joined and participated in the conspiracy was overwhelming. Though Gwen arranged the February 28th purchase, Jones was directly involved in the transaction, making not one but two deliveries of crack cocaine to MacLaren that evening. MacLaren himself testified that Jones had delivered crack to him on behalf of Boo on at least two prior occasions, suggesting that Jones had a regular and well-defined role in the conspiracy.[2] Moreover, the jury heard recordings in which both of the Morrows discussed their belief that Jones was skimming crack from deliveries, confirming that Jones was an active participant in their operation. *Cf. United States v. Boria*, 592 F.3d 476, 485 (3d Cir. 2010) (holding co-conspirator testimony sufficient to show that a defendant joined a conspiracy with knowledge of its illegal objective). The foregoing evidence was more than sufficient for a jury to infer that Jones conspired with the Morrows to possess and distribute crack cocaine.

---

[2] Jones attacks MacLaren's credibility, arguing that he "had a long history of dishonesty . . . ." On appeal, however, we do not weigh the evidence or question the credibility of witnesses. *United States v. Soto*, 539 F.3d 191, 194 (3d Cir. 2008). Though the jury was free to disbelieve MacLaren, it chose not do so.

Jones also argues that the evidence at trial was insufficient to show that he knew the bags he delivered to Gwen and MacLaren contained crack cocaine. To convict Jones of possession of crack cocaine with intent to distribute, the Government had to show that he knew the bags contained a controlled substance. *See United States v. Bobb*, 471 F.3d 491, 497 (3d Cir. 2006). And to convict Jones of conspiracy, the Government had to demonstrate that Jones knew the conspiracy involved distribution of a controlled substance, not some other form of contraband. *See Boria*, 592 F.3d at 481.

The Government introduced ample evidence at trial from which a reasonable jury could have inferred Jones's knowledge. The jury could have concluded, for example, that Jones knew the bags he delivered to MacLaren on February 28th contained crack because both Boo's and Gwen's recorded statements suggested that he had opened them. MacLaren also testified that two of Jones's previous deliveries had been similarly deficient, which allowed the jury to infer that Jones regularly skimmed crack cocaine from deliveries. Viewing these facts in the light most favorable to the Government, there was sufficient evidence for the jury to conclude not only that Jones knew he was dealing a controlled substance, but also that he knew it was crack cocaine.

B.

Jones next contends that the District Court erred by admitting a recording of Gwen explaining to MacLaren why she believed Jones was responsible for the missing crack. Because Gwen did not testify, Jones moved to exclude the recording as violating his Sixth

5

Amendment right to confront witnesses against him, as articulated in *Bruton v. United States*, 391 U.S. 123 (1968). The District Court denied the motion and admitted the recording into evidence. On appeal, Jones reiterates his *Bruton* argument.

In *Bruton*, the Supreme Court held that in certain circumstances, admission of a non-testifying co-defendant's confession that inculpates the defendant violates the Sixth Amendment's Confrontation Clause because the defendant has no opportunity for cross examination. 391 U.S. at 126. We have interpreted *Bruton*'s rule broadly, applying it not only to custodial confessions but also to informal statements such as Gwen's. *See, e.g., United States v. Ruff*, 717 F.2d 855, 857-58 (3d Cir. 1983).

Subsequent to *Bruton*, the Supreme Court held that admission of a non-testifying co-conspirator's statement against a defendant does not offend the Confrontation Clause as long as the statement satisfies the co-conspirator exclusion of Federal Rule of Evidence 801(d)(2)(E). *Bourjaily v. United States*, 483 U.S. 171, 182-83 (1987). Relying on *Bourjaily*, the District Court held that Gwen's statements were not hearsay under Rule 801(d)(2)(E) and therefore were not barred by *Bruton*.

Jones does not dispute this conclusion on appeal. Nor could he. As discussed previously, the Government's evidence was more than sufficient to demonstrate that Gwen and Jones were co-conspirators. Moreover, Gwen's statements placating MacLaren, a regular customer of the group, were made in furtherance of the conspiracy.

6

Because Gwen's statements satisfied Rule 801(d)(2)(e), the District Court did not err in admitting the recording.

C.

Finally, Jones claims the District Court erred by allowing MacLaren to testify about Jones's prior drug deliveries. Jones contends this testimony was inadmissible pursuant to Federal Rule of Evidence 404(b) because it was offered only to show Jones's propensity to engage in drug deals similar to the one that occurred on February 28th.

Under Rule 404(b), evidence of a defendant's "other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Fed. R. Evid. 404(b). However, such evidence is admissible to show, among other things, a defendant's knowledge or the existence of a plan or scheme. *Id*.

Before admitting evidence of a defendant's prior bad acts, a district court must ensure that the evidence is both offered for a proper purpose under Rule 404(b) and relevant under Rule 402. *United States v. Sampson*, 980 F.2d 883, 886 (3d Cir. 1992) (citing *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988)). Next, the district court must consider whether the probative value of the evidence is substantially outweighed by its potential for unfair prejudice under Rule 403. *Id*. Finally, the court must instruct the jury to consider the evidence only for the limited purposes for which it is admitted. *Id*.

Here, MacLaren's testimony regarding Jones's prior crack deliveries was both relevant under Rule 402 and introduced for several permissible purposes under Rule 404(b). As noted previously, evidence that Jones skimmed from earlier deliveries allowed the jury to infer that Jones knew the packages he delivered for Boo—including the bags given to MacLaren on the 28th— contained crack, which the Government was required to prove to convict Jones of both charged offenses. Jones's prior conduct also revealed the *modus operandi* of the conspiracy and demonstrated Jones's regular and well-defined role in the operation as Boo's deliveryman.

Jones's principal argument on appeal is that the probative value of MacLaren's testimony was outweighed by its potential for unfair prejudice. However, "[w]hen a court engages in a Rule 403 balancing and articulates on the record a rational explanation, we will rarely disturb its ruling." *Sampson*, 980 F.2d at 889. Here, the District Court correctly found that the considerable probative value of MacLaren's testimony outweighed any danger of unfair prejudice. Furthermore, the District Court minimized the potential for prejudice by giving the jury a thorough and comprehensive limiting instruction. In light of the "considerable leeway" we afford district courts when they make both Rule 404(b) and Rule 403 determinations, *id*. at 886, allowing MacLaren to testify about Jones's prior deliveries was not an abuse of discretion.

III.

For the foregoing reasons, we will affirm Jones's judgment of conviction.