**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 12-1378
_____


UNITED STATES OF AMERICA

v.

FRANCO BADINI,

Appellant

_____


On Appeal from the United States District Court
for the Western District of Pennsylvania
(No. 2-09-cr-00325-014)
District Judge:  Honorable Terrence F. McVerry

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 16, 2013


_____


Before:  SMITH, FISHER, and CHAGARES, Circuit Judges.

(Filed: May 23, 2013)


_____

OPINION
_____

CHAGARES, Circuit Judge.

Appellant Franco Badini was convicted by a jury of conspiracy to distribute cocaine, and the District Court sentenced him to twenty years of imprisonment. He now appeals both his conviction and sentence. For the reasons set forth below, we will affirm.

I.

We write solely for the parties and will therefore recount only those facts that are essential to our disposition. In March of 2010, a grand jury returned an indictment charging various crimes against sixteen defendants who were allegedly part of a drug ring. Badini was indicted on only one count, which charged him with conspiracy to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 846.

Most defendants pled guilty, but Badini elected to try his case to a jury. At trial, the Government introduced evidence designed to show that Badini was involved with the United States branch of a cocaine-trafficking organization based in Mexico. The United States branch of the organization was headed by Emir Dadanovic, a Bosnian national living in Indianapolis. Dadanovic employed several salesmen to cover various geographic areas, including Omer Dugalic, who sold drugs in Pennsylvania. At some point, Dugalic began providing cocaine to David Curran, a resident of Upper St. Clair, Pennsylvania. In 2009, the Government began surveilling Curran's activities. The Government observed Dugalic visiting Curran to provide him with cocaine, and alleged at trial that Badini was one of Curran's associates who would often buy and resell cocaine that Curran obtained from Dugalic.

2

The jury convicted Badini of conspiracy to distribute cocaine after hearing evidence including many taped conversations involving Badini and Curran. The District Court sentenced Badini to twenty years of imprisonment, which was the mandatory minimum because he had a previous drug conviction. Badini now appeals, arguing that he was convicted on insufficient evidence, that the District Court erroneously admitted prejudicial testimony, and that the Government conducted plea negotiations improperly.

II.[1]

A.

Badini first asserts that the Government did not present evidence sufficient to demonstrate that he was part of the conspiracy involving Curran and Dugalic. He argues that while the evidence may have shown that he bought drugs from Curran, there was nothing to prove that Badini shared a common purpose with the conspirators.

When a defendant appeals a jury verdict based on alleged insufficiency of the evidence, he has a steep hill to climb. We must view the evidence in the light most favorable to the Government and uphold the verdict unless no rational trier of fact could have found that the essential elements of the crime were proven. United States v. Dent, 149 F.3d 180, 187 (3d Cir. 1998).

We apply this deferential standard to determine whether the Government met its burden of proving a conspiracy, which consists of three elements: (1) unity of purpose between the conspirators; (2) intent to achieve a common goal; and (3) an agreement to

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

work together to achieve the goal. United States v. Gibbs, 190 F.3d 188, 197 (3d Cir. 1999). The Government may prove the elements of a conspiracy through exclusively circumstantial evidence. Id. While Badini is correct that a mere buyer-seller relationship does not amount to a conspiracy, "[t]he government need not prove that each defendant knew all of the conspiracy's details, goals, or other participants." Id. We have held that when a defendant is a buyer who has limited dealings with a conspiracy, we should examine several factors to determine whether his purchases are circumstantial evidence of an intent to join the conspiracy. Id. at 199. Among the factors are the length of affiliation between buyer and seller, whether there is a demonstrated level of mutual trust, whether there is an established method of payment, and the extent to which the transactions are standardized. Id. In Gibbs, we also noted that other courts have looked to whether the buyer bought large amounts of drugs and whether the buyer purchased the drugs on credit. Id.

The Government argues that under Gibbs, its evidence was easily sufficient for the jury to conclude that Badini intended to join the conspiracy. During the trial, Dugalic testified that he met Badini on several occasions when Badini was buying cocaine from Curran. On one occasion, Dugalic brought Curran two kilograms of cocaine, and then saw Curran sell one of the kilograms to Badini. Appendix ("App.") 519. Dugalic also saw Curran show Badini how to "cut the coke" because Badini had never done it before. Id. He testified that after Badini bought a kilogram of cocaine, Badini returned later the same day to pay Curran $36,000. App. 543. The Government also introduced an audio tape of a telephone call between Curran and Badini in which Curran told Badini to "[s]tay

4

on the ball." App. 1101. A Government witness testified that Curran's comment was meant to encourage Badini to "get the money in order." App. 430. The Government played another tape of a call between Curran and Badini in which the two discussed Curran adding "comeback" to the cocaine. After discussing a delivery, Badini told Curran, "If he bring it, I'll unload his shit. I load everything you got." App. 1186. Later, Curran told Badini to "[g]ive [him] . . . that four by tomorrow." App. 1187.

Based on this evidence, it was rational for the jury to conclude that Badini's purchases were "step[s] in achieving the conspiracy's common goal of distributing cocaine for profit." Gibbs, 190 F.3d at 197 (quotation marks omitted). Government evidence suggested that the relationship between Curran and Badini lasted for at least several months; that they operated with a level of trust such that Badini could make purchases on credit; that Badini bought large amounts of drugs and sought to buy as much as possible when Curran received deliveries; that Badini met Curran's supplier and discussed deliveries that would be made to Curran; that Curran and Badini discussed Badini's plans to resell the cocaine after purchasing it; and that Curran assisted Badini with altering the cocaine for resale. Badini ignores much of this evidence in his briefs, simply stating that he did not make deals with other co-conspirators and that he was unsure of the roles of co-conspirators he met. Yet the jury was entitled to make inferences based on the time Badini spent with Curran and Dugalic; when it added all of the evidence together, the jury rationally concluded that Badini was not merely an occasional buyer, but played a role in the conspiracy. Thus, we reject Badini's challenge to the sufficiency of the evidence.

5

B.

Badini next argues that the conviction should be reversed because the District Court improperly admitted testimony of Government witness Shane Hennen, who testified that he had bought and sold drugs with Badini in transactions unrelated to the conspiracy involving Curran.

Before trial, the Government provided Badini with notice that it would introduce Hennen's testimony under Federal Rule of Evidence 404(b). That Rule prohibits use of evidence of a previous crime to prove a person's character, but allows the same evidence for other purposes, such as to show motive, intent, or knowledge. "To be admissible under Rule 404(b), evidence of uncharged crimes or wrongs must (1) have a proper evidentiary purpose; (2) be relevant; (3) satisfy Rule 403;[2] and (4) be accompanied by a limiting instruction (where requested) about the purpose for which the jury may consider it." United States v. Green, 617 F.3d 233, 249 (3d Cir. 2010). The District Court denied Badini's motion to exclude Hennen's testimony, stating that evidence of prior cocaine distribution was relevant to show intent or knowledge. App. 31. It also noted that our Court "has stated on multiple occasions that prior instances of drug distribution . . . are relevant to whether a defendant had an intent to distribute a controlled substance as charged in the indictment." App. 25-26.

---

[2] Rule 403 calls for evidence's exclusion if "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Badini's principal argument on appeal is that the District Court never performed the Rule 403 balancing as required by the third prong of our Rule 404(b) test. Citing United States v. Sampson, 980 F.2d 883, 889 (3d Cir. 1992), Badini maintains that if such a weighing does not occur on the record, we must automatically reverse and remand. Yet this argument exaggerates Sampson's holding and ignores our subsequent case law. Indeed, Sampson addressed a 404(b) question and explained that where "the court failed to perform [the requisite] analysis, or where its rationale is not apparent from the record, there is no way to review its discretion." Id. While we reversed and remanded that case to the district court, we implied that such a result may not be required if the record otherwise demonstrates the reasons for the district court's decision. Id. Several years later, we provided clarification in United States v. Sriyuth, 98 F.3d 739 (3d Cir. 1996). In Sriyuth, we cited Sampson, but continued by explaining that when we do not have the means to assess a district court's 403 analysis, "we may review the record and conduct the obligatory weighing ourselves." Id. at 745 n.9 (citing United States v. Himelwright, 42 F.3d 777, 781 (3d Cir. 1994)). Thus, if the record is sufficient, we are not required to reverse a conviction simply because the district court did not balance probative value against prejudice on the record.

Badini next maintains that if we perform our own Rule 403 analysis, we must conclude that the Hennen testimony should have been excluded. Citing no case law in support, Badini merely asserts that the testimony likely confused and misled the jurors by making them believe he was on trial for separate drug crimes, and that they would assume that he was guilty in this instance if he had dealt drugs in the past. With regard to

7

probative value, Badini claims that Hennen's testimony was not necessary to prove knowledge or intent since the Government presented other evidence on those issues.

As noted by the District Court, in drug cases we have recognized the probative value of evidence showing that a defendant has previously been involved in drug transactions. See, e.g., Sampson, 980 F.2d at 887. Here, Hennen's testimony helped establish Badini's knowledge of drug transactions and his intent to sell drugs that he purchased. First, Hennen testified that he knew that Badini dealt cocaine. App. 848. He also testified that after he purchased cocaine, Badini directed Hennen to the house of Michael Law. Law owned a cocaine press, which was used to prepare cocaine for sale. App. 845. The Government earlier presented evidence showing that Badini had entered the same house while carrying a blue bag directly after meeting with Curran. App. 458-60.

These facts, if credited, made it more likely that Badini had knowledge of the cocaine trade and intended to take part in that trade by selling cocaine after buying it from Curran. For example, Hennen's testimony concerning the cocaine press added to the likelihood that Badini was using the press to prepare cocaine for sale after purchasing it from Curran.[3] Thus, the evidence increased the chances that the jury would believe

---

[3] Though the conversation concerning the press occurred several weeks after Curran's arrest, Hennen's testimony about his cocaine transactions with Badini largely overlapped with the time span of the alleged conspiracy. We conclude that testimony concerning Badini's knowledge about the cocaine press at Law's house in December 2009 is relevant in assessing his role in the conspiracy that took place in the preceding months. See United States v. Bergrin, 682 F.3d 261, 281 n.25 (3d Cir. 2012) ("[L]ight can be shed on motive, intent, and the other issues listed in Rule 404(b)(2) as much by a subsequent course of behavior as it can by a prior one.").

that Badini's dealings with Curran were more than that of a simple cocaine purchaser; it helped show that Badini sold the cocaine that he purchased from Curran, and thus took part in the scheme of buying cocaine and selling it for profit. Based on this, we do not believe that any unfair prejudice or jury confusion outweighed the probative value of Hennen's testimony. The questioning of Hennen made clear that his arrest for cocaine was unrelated to the Curran/Badini conspiracy, and the District Court very carefully instructed the jury on the permissible uses of the Hennen testimony. App. 977-79. Though there may have been some risk that jurors would nevertheless make unwarranted conclusions about Badini's propensity to sell cocaine, that risk was outweighed by the probative value that Hennen's testimony carried in showing that Badini dealt cocaine — as Badini himself argues, the Government's evidence as to Badini's role in his interactions with Curran was not overwhelming.[4] Our case law demonstrates that we must reverse a ruling on these grounds only if the risk of unfair prejudice was much greater than it was here. See, e.g., Green, 617 F.3d at 251-52 (in cocaine distribution case, rejecting defendant's Rule 403 challenge to district court's admission of evidence

---

[4] Badini does not attempt to reconcile his position that the Government's evidence concerning his knowledge of the conspiracy was insufficient with his position that the Hennen testimony carried little probative value because the Government had already presented evidence of Badini's knowledge and intent. Even if Hennen's testimony was not directly aimed at showing Badini's involvement in the conspiracy with Curran, it is clear that establishing his knowledge of the cocaine trade and Badini's intent to sell cocaine are relevant in determining whether his interactions with Curran amounted to a role in the conspiracy.

that defendant sought to buy dynamite to kill officer that arrested him). Consequently, we will affirm the District Court's decision to allow Hennen's testimony.[5]

C.

Badini also asks us to vacate his conviction or his sentence due to perceived flaws in the Government's decision to seek a twenty-year sentence by filing an information under 21 U.S.C. § 851.[6]

Badini first asserts that the Government engaged in unfair plea bargaining because it offered Badini a plea agreement containing a 180-month sentence, but stated that it would seek the twenty-year mandatory minimum if Badini would not accept the deal. Badini argues that part of the reason the plea deal failed was that he refused to cooperate by providing information about criminal activities by another person. He cites case law for the proposition that pretrial cooperation can create a risk of injury, but provides no law to indicate that the Government may not make an offer contingent on cooperation. As the District Court concluded, Badini has not demonstrated any vindictiveness by the Government, and his argument concerning the unfairness of the plea negotiation is foreclosed by controlling precedent. See Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978) ("[I]n the 'give-and-take' of plea bargaining, there is no [constitutionally

---

[5] Though we have focused on the third prong of the Rule 404(b) test because it is emphasized in Badini's brief, we also conclude that the first, second, and fourth prongs were satisfied.

[6] 21 U.S.C. § 841 provides for a twenty-year mandatory minimum sentence for those who have a prior felony drug conviction, and § 851 requires the Government to file an information with the court stating the previous convictions to be relied upon.

impermissible] element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer.").[7]

Badini next makes a somewhat perplexing argument that the Government's plea deal offer involving a 180-month sentence (which was within the advisory Sentencing Guidelines range) was an attempt to circumvent the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005). According to Badini, by offering him the 180-month sentence, the Government was attempting to prevent the District Court from applying a downward variance to his sentence. The full scope of Badini's argument is unclear, but it appears to imply that use of Federal Rule of Criminal Procedure 11(c)(1)(C)[8] is impermissible under Booker because stipulated sentences limit district courts' sentencing discretion. Yet a district court must examine the Guidelines in order to determine whether to accept a plea agreement that contains a stipulated sentence under Rule 11(c)(1)(C). Freeman v. United States, 131 S. Ct. 2685, 2692 (2011). The Supreme Court has explained this process and found no constitutional infirmity in it, even after Booker. Id. If a district court examines a plea agreement and decides that the sentence is improper, it may refuse to accept the agreement. Thus, its discretion is not improperly limited when the parties enter into a plea deal with a stipulated sentence.

---

[7] Badini attempts to distinguish Bordenkircher because it did not involve a refusal to reveal criminal activity of other individuals. Yet, once again, he fails to cite any law supporting his position, simply stating that the Government's action was "unjust." Reply Br. 13.

[8] The Rule allows a plea agreement to specify "that a specific sentence or sentencing range is the appropriate disposition of the case."

11

Badini's arguments concerning the plea bargaining process and 21 U.S.C. § 851 are unsupported by case law.[9]  For that reason, we will affirm his sentence.

III.

Based on the foregoing, we will affirm Badini's conviction and sentence.

---

[9] Badini's opening brief also seems to argue that because his prior conviction was eighteen years old, the mandatory minimum sentence was improper.  He points to no provision in the law that limits its scope to convictions of a certain recency.