NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2744
_____

UNITED STATES OF AMERICA

v.

HOLLY KASZUBA,

Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-17-cr-00027-003)
District Judge: Honorable A. Richard Caputo
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 16, 2020

Before: CHAGARES, PORTER and FISHER, *Circuit Judges*.

(Filed: August 14, 2020)
_____

OPINION[*]
_____

FISHER, *Circuit Judge*.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

A jury found Holly Kaszuba guilty of aiding and abetting the distribution of fentanyl/heroin resulting in the death of Christopher Graff, a co-worker at Cinram Manufacturing. She appeals her conviction on multiple grounds. We will affirm.[1]

Kaszuba first argues that the District Court erred in admitting evidence of a prior heroin delivery that Matthew McCollum, another co-worker, made to four other Cinram employees twenty minutes before the delivery to Kaszuba and Graff. Kaszuba contends that, because she was not involved in the first delivery, the evidence was inadmissible under Federal Rule of Evidence 401. The District Court ruled that the evidence was relevant to show causation, and we agree. The similarities in the nature, source, middleman, and packaging of the drugs; the temporal proximity between the two deliveries; the overdose of one of the parties to the first delivery; and the testimony given as to the fentanyl-like effects of that heroin, are probative of the fact that the heroin delivered to Graff that evening contained fentanyl and caused his death.[2]

Kaszuba also argues that the evidence of the prior heroin deliveries, even if relevant, was unfairly prejudicial because it allowed several Cinram employees to testify

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. We review part of the District Court's ruling for abuse of discretion, *United States v. Kemp*, 500 F.3d 257, 295 (3d Cir. 2007) (admission of evidence); *United States v. Friedman*, 658 F.3d 342, 352 (3d Cir. 2011) (jury instructions), and review the District Court's denial of the motion for judgment of acquittal *de novo*, *United States v. Jimenez*, 513 F.3d 62, 72 (3d Cir. 2008).

[2] *See Kemp*, 500 F.3d at 295 (citing Fed. R. Evid. 401).

about how their addictions affected their lives, thus "serv[ing] only to inflame the jury."[3] Rule 403 gives a trial court discretion to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice."[4] We "rarely disturb" a trial court's Rule 403 determination if the court "engage[d] in a Rule 403 balancing and articulate[d] on the record a rational explanation" for its decision.[5] Here, the District Court conducted just such an analysis. The risk of unfair prejudice was low because the evidence was not used to implicate Kaszuba in the first delivery. The probative value, meanwhile, was substantial because causation was one of the elements of the charge against Kaszuba, and she had argued that fentanyl/heroin did not cause Graff's death. Consequently, the District Court did not err in admitting the evidence.

Next, Kaszuba argues that the introduction of the toxicology report through Dr. Coyer, the lab director, rather than through the technician who actually performed the testing, violated her right under the Confrontation Clause. A laboratory report containing a testimonial certification may not be introduced through the testimony of a person who neither signed the report nor performed or observed the relevant test.[6] Kaszuba's confrontation right was preserved because Dr. Coyer compiled and signed the report.

[3] Appellant's Br. 14-15.
[4] Fed. R. Evid. 403.
[5] *United States v. Sampson,* 980 F.2d 883, 889 (3d Cir. 1992).
[6] *Bullcoming v. New Mexico*, 564 U.S. 647, 655, 657-58 (2011); *see also id.* at 672 (Sotomayor, J., concurring) (clarifying that there would be no violation if the person testifying was a "supervisor, reviewer, or someone else with a personal, albeit limited, connection to the scientific test at issue").

Because he reviewed every test the technicians conducted and every procedure they used, he did not simply "parrot[] what the non-testifying technician allegedly found during the testing."[7] He was well-equipped to convey what the technicians knew or observed about a particular test and process, and he could expose any lapses that could have occurred during testing.[8] There was, therefore, no violation of Kaszuba's confrontation right.

Kaszuba additionally contends that the District Court erred when it denied her motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29. She claims that, because the District Court did not account for all of the heroin McCollum distributed, the Government failed to prove beyond a reasonable doubt that she distributed the drugs. In any review of the sufficiency of the evidence supporting a criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[9] In the present case, the Government provided enough evidence for a rational juror to find Kaszuba guilty of aiding and abetting the distribution of a controlled substance resulting in death. The evidence showed that: Graff approached Kaszuba to obtain heroin; Kaszuba, in turn,

---

[7] Appellant's Br. 17.

[8] *See Bullcoming,* 564 U.S. at 661-62 (stating that the introduction of the surrogate testimony was error since the witness could neither "convey what [the analyst] knew or observed" about the particular test and the testing process employed, nor "expose any lapses or lies on the certifying analyst's part").

[9] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

approached McCollum to obtain the heroin; Graff neither knew McCollum nor spoke to him during the entire transaction; the money used to purchase the heroin was Graff's; and Kaszuba handed the money from Graff to McCollum, then handed the drugs from McCollum to Graff. The Court did not err in denying Kaszuba's motion.

Lastly, Kaszuba argues that the District Court erred in denying her Proposed Instructions 1, 2, and 4, which were all theory of defense instructions. "A defendant is entitled to a theory of defense instruction if (1) [she] proposes a correct statement of the law; (2) [her] theory is supported by the evidence; (3) the theory of defense is not part of the charge; and (4) the failure to include an instruction of [her] theory would deny [her] a fair trial."[10] Kaszuba's arguments as to Proposed Instructions 1 and 2 fail because the instructions were not supported by the evidence. There was no evidence that Kaszuba and Graff were joint purchasers who shared the drugs. In fact, Kaszuba admitted that she had "handed the money to [McCollum] from [Graff]."[11] Furthermore, her statement that she "didn't get any drugs . . . for doing it" shows that she did not, in fact, share the drugs with Graff.[12] Kaszuba's argument as to Proposed Instruction 4, on the other hand, fails because it was already part of the charge to the jury. The substance of the instruction was covered by the third and fourth elements of the distribution offense.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[10] *United States v. Hoffecker*, 530 F.3d 137, 176 (3d Cir. 2008) (citation omitted).
[11] S. App. 758.
[12] S. App. 758.

5