NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3138
_____

UNITED STATES OF AMERICA

v.

ANTHONY JOHNSON,
                    Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 1-17-cr-00123-001)
District Judge: Honorable Sylvia H. Rambo
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1
on October 5, 2021

Before: SHWARTZ, RESTREPO, and SCIRICA, *Circuit Judges*.

(Opinion Filed:  November 19, 2021)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

**SCIRICA**, *Circuit Judge*

Anthony Johnson was convicted of Hobbs Act Robbery under 18 U.S.C. § 1951 (Count I) and Using, Carrying, Brandishing and Discharging a Firearm During and in Relation to a Crime of Violence under 18 U.S.C. § 924(c)(1)(A) (Count II), as well as aiding and abetting on both Counts. Johnson appeals his conviction, contending the District Court's decision to admit his statement to the police regarding his "history of doing stick-ups" violated Federal Rules of Evidence 403 and 404(b). Johnson claims the statement's probative value was substantially outweighed by its prejudicial effect and the Government sought to introduce the statement for the sole purpose of proving his propensity to commit the crime. Because the court properly admitted the statement, we will affirm Johnson's conviction and sentence.

I.

On January 9, 2016, police were dispatched to a shooting at the 300 block of Girard Avenue, York, Pennsylvania. Upon arriving at 325 Girard Avenue, an officer observed an 18-year-old male, Shyhiem McDowell, lying in the backyard with a gunshot wound to the left side of his head. McDowell was brought to York Hospital where he was treated for a life-threatening head wound.

A surveillance video from a homeowner in the area showed Johnson, 16-year-old Hydiea Banks, and McDowell meeting outside Pak's convenience store and walking down Euclid Alley toward Girard Avenue. At the time, Johnson was Banks' mother's live-in-boyfriend. Johnson, Banks, and McDowell turned onto Girard Avenue and entered a breezeway between two houses on Girard Avenue. Shortly after they entered,

2

the surveillance video showed Johnson exiting the breezeway and running down Euclid Alley.  Banks was then observed running in the same direction as Johnson.

Police detectives interviewed Johnson on January 11, 2016.  Johnson stated he thought the purpose of the meeting with McDowell was to purchase "bud" (marijuana).  He claimed that Banks kept her hands in her pocket while discussing the bud purchase and never brandished a gun while he was in the breezeway.  Johnson insisted he left the breezeway because he felt "something [was] just not right."  Gov. Exh. 50.

Later in the same interview, Johnson admitted the purpose of the meeting was to rob McDowell.  Johnson told detectives that on the morning of January 9, 2016, Banks asked him to help her rob someone who she knew carried cash and drugs.  Johnson agreed to join her in exchange for money.  Johnson initially confessed to searching McDowell while in the breezeway, but later claimed only Banks searched McDowell.  Johnson further claimed he left the breezeway when Banks told McDowell "you already know what this is," referring to the robbery.  Johnson maintained he never saw Banks brandish a gun.

Banks was arrested on January 13, 2016.  During her arrest, officers recovered the pistol used in the McDowell shooting.

During a second interview with police on January 14, 2016, Johnson repeated his claim that he never saw a gun while in the breezeway.  Later in the interview, Johnson admitted he saw Banks holding the gun but insisted he fled before she fired it because he was "scared to death."  Detectives told Johnson they did not believe his story because he would not have been scared if he intended to assist with the robbery.  Johnson responded

3

"It's just – I am telling you. Look, my job is over. I don't see nothing. Like I said, from my history of doing stick-ups, get the f… out of here. I am out. I am out. There is no need for me to stay here. You got this secured." Gov. Exh. 51. At the time of the interview, McDowell was lying in a coma, so detectives only had Johnson's version of the events.

McDowell spent several months in a coma but eventually recovered. At trial, McDowell testified that after entering the breezeway he bent down to tie his shoe, at which time Banks pointed a gun at him and stated, "I need everything." When McDowell refused to give them his property, Johnson attempted to remove McDowell's LA Lakers chain from his neck but was unsuccessful. McDowell further testified that, after attempting to remove the chain, Johnson told Banks "you know what to do then" and exited the breezeway. After Johnson left, Banks shot McDowell in the head.

Johnson did not testify at trial, but the Government played the audio and video recordings of Johnson's two interviews with the police. The second interview included Johnson's statement "from my history of doing stick-ups." The jury found Johnson guilty under 18 U.S.C. § 1951 and 2 and 18 U.S.C. § 924(c)(1)(A) and 2. On February 20, 2020, Johnson was sentenced to 110 months in prison for Count 1 and 120 months in prison for Count 2, to run consecutively.

II.[1]

---

[1] The trial court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

4

Johnson seeks to vacate his sentence and obtain a new trial. He contends the court abused its discretion by admitting his statement he had a "history of doing stick-ups." We will affirm the court's decision to admit the statement under Federal Rules of Evidence 403 and 404(b).[2]

A.

Rule 404(b) bars evidence of a crime or other act "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). The evidence, however, "may be admissible for another purpose." Fed. R. Evid. 404(b)(2). "The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character." *Huddleston v. United States*, 485 U.S. 681, 686 (1988). Rule 404(b) provides a list of permissible uses, but this list is not exclusive. *United States v. Sampson*, 980 F.2d 883, 886 (3d Cir. 1992). Moreover, Rule 404(b) favors admissibility. *Id.*

---

[2] We review the court's decision to admit evidence for abuse of discretion. *United States v. Higdon*, 638 F.3d 233, 238 (3d Cir. 2011); *Complaint of Consolidation Coal Co.*, 123 F.3d 126, 131 (3d Cir. 1997). We exercise plenary review over rulings interpreting the Federal Rules of Evidence. *United States v. Green*, 617 F.3d 233, 239 (3d Cir. 2010). Accordingly, "[t]o the extent that our review of the district court's Rule 404(b) ruling requires us to interpret the rules of evidence our review is plenary." *United States v. Lee*, 612 F.3d 170, 186 (3d Cir. 2010) (quoting *United States v. Daraio*, 445 F.3d 253, 259 (3d Cir. 2006)). But "if the evidence could be admissible in some circumstances, we review the district court's determination allowing it to be admitted for abuse of discretion." *United States v. Cruz*, 326 F.3d 392, 394 (3d Cir. 2003). Our decision would be the same even if we exercised plenary review.

We apply a four-part test to determine the admissibility of evidence of prior bad acts. *United States v. Cruz*, 326 F.3d 392, 395 (3d Cir. 2003). The evidence must: (1) have a proper evidentiary purpose under Rule 404(b); (2) be relevant to that purpose under Rule 402; (3) pass the balancing test under Rule 403; and (4) be accompanied by a limiting instruction, upon request. *Huddleston*, 485 U.S. at 691-92; *United States v. Green*, 617 F.3d 233, 249 (3d Cir. 2010); *Sampson*, 980 F.2d at 886. Johnson contests only the first and third prongs.

To prove a proper evidentiary purpose, the government must "clearly articulate how that evidence fits into a chain of logical inferences" without inferring the defendant has a propensity to commit the crime. *Cruz*, 326 F.3d at 395 (quoting *United States v. Mastrangelo*, 172 F.3d 288, 295 (3d Cir. 1999)). But the government's burden is not onerous, and we require only "some showing of a proper relevance." *Sampson*, 980 F.2d at 888.

Johnson contends the statement lacked a proper evidentiary purpose because the government's true purpose in seeking to admit his statement was to prove his bad character and propensity to commit the crime. According to Johnson, because his statement served to substantiate his defense that he ran away before Banks shot McDowell, there was no logical reason, other than propensity, for the Government to use his statement.

Johnson claimed he left the scene of the robbery before his co-conspirator, Banks, shot McDowell in the head, and that he abandoned his involvement in the crime when he thought something bad was about to take place. The crux of Johnson's defense was to

6

distance himself from the near fatal shooting by trying to convince the police, and then the jury, that he had nothing to do with the shooting. As part of his defense, Johnson told police he had a "history of doing stick-ups" and knew when to leave a robbery depending on how events transpired. This was relevant to the shooting and probative to providing context and background to the investigation and factual development of the case.

The Government asserted Johnson's statement would help the jury better understand his involvement in the crime and would also explain the detectives' skepticism of Johnson's claims, giving context to their decision to move forward with the investigation and charges. Providing the finder of fact with helpful background information meets the proper purpose requirement under Rule 404(b). *Green*, 617 F.3d at 250. Accordingly, because this evidence provided helpful context to the case, the use of Johnson's statement served a proper evidentiary purpose under Rule 404(b).

Johnson further contends the statement was unfairly prejudicial under Rule 403, both as part of his Rule 404(b) argument and as an independent ground for overturning the trial court's decision to admit the statement. Rule 403 requires a balancing test and permits the court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. The trial court has broad discretion over a Rule 403 judgment and is in the best position to assess the extent of the prejudice caused by specific evidence. *See Cruz*, 326 F.3d at 396. Therefore, "[w]hen a court engages in a Rule 403 balancing and articulates on the record a rational explanation, we will rarely disturb its ruling." *Sampson*, 980 F.2d at 889. "Where, however, the court failed to perform this analysis, or where its rationale is not apparent

7

from the record, there is no way to review its discretion." *Id.* "In that instance, we may review the record and conduct the obligatory weighing ourselves." *United States v. Sriyuth*, 98 F.3d 739, 745 n.9 (3d Cir. 1996).

There is sufficient evidence to find the court engaged in a Rule 403 analysis. The trial judge heard arguments from both sides regarding possible prejudice and rejected Defendant's argument that Johnson's statement was unfairly prejudicial. The court's decision to allow the statement after engaging with the parties in this discussion implicitly demonstrates its rationale under a Rule 403 balancing test.

The trial judge properly concluded the statement's probative value was not substantially outweighed by a danger of unfair prejudice against Defendant. The statement served as Johnson's attempt to clarify to the detectives why he voluntarily participated in the robbery yet fled when Banks produced a gun. Although Johnson did not testify at trial, this explanation was an integral part of his defense that he was not involved in the shooting of McDowell. Indeed, the statement also shed light on Johnson's mens rea. *See United States v. Repak*, 852 F.3d 230, 247 (3d Cir. 2017) (holding that evidence of mens rea had "significant" probative value when the defendant disputed that element). Offering the statement in Johnson's own words was relevant to discredit his defense that he did not participate in the shooting. Any prejudice from his statement about having done other stick-ups was not unfair because Johnson himself offered the statement to law enforcement as an explanation to further his own narrative of why he was not guilty of attempted murder. Accordingly, it was not error to admit the statement.

## B.

Even if admitting the statement was in error, it did not violate Johnson's substantial rights. A Rule 404(b) violation is subject to harmless error review. Fed. R. Evid. 103. An error is harmless where it does not violate a party's substantial rights, such as where there is "a 'high probability' that the discretionary error did not contribute to the verdict." *Langbord v. U.S. Dep't of Treasury*, 832 F.3d 170, 196 (3d Cir. 2016) (quoting *McQueeney v. Wilmington Tr. Co.,*779 F.2d 916, 924–25 (3d Cir. 1985)). There is ample evidence supporting Johnson's conviction that does not implicate Rule 404(b). Such evidence includes Johnson's two videotaped interviews, including his admission that he and Banks planned to rob McDowell, the undisputed fact that Banks shot McDowell, and McDowell's testimony against Johnson. As we have noted, McDowell testified that Johnson attempted to remove McDowell's jewelry, was present when Banks brandished the gun, and told Banks "you know what to do then" after McDowell refused to give them his property. It is highly probable the admission of the statement did not contribute to the outcome of the trial, even if it was erroneous.

## III.

For the foregoing reasons, we will affirm Johnson's conviction.