**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3876
_____

UNITED STATES OF AMERICA

v.

DAVID EVDOKIMOW,

Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Crim. Action No. 1-14-cr-00605-001)
District Judge: Honorable Noel L. Hillman

_____

Argued: October 26, 2017
_____

Before: GREENAWAY, JR., COWEN, *Circuit Judges*, and PADOVA, *District Judge*[*]

(Opinion Filed: March 16, 2018)
_____

Robert J. Basil, Esq.
The Basil Law Group
1270 Broadway
Suite 305
New York, NY 10001

---

[*] The Honorable John R. Padova, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

Lawrence S. Lustberg, Esq.   [ARGUED]
Jason R. Halpin, Esq.
Gibbons P.C.
One Gateway Center
Newark, NJ 07102
        *Counsel for Appellant*

Mark E. Coyne, Esq.
John F. Romano, Esq.   [ARGUED]
Office of United States Attorney
970 Broad Street, Room 700
Newark, NJ 07102
        *Counsel for Appellee*

_____

OPINION[**]

_____


PADOVA, *Senior District Judge*.

David Evdokimow appeals his conviction, after a jury trial, of eight counts relating to his failure to report and pay taxes on his personal and business income.  He raises two claims of error.  First, he argues that he was erroneously prevented from presenting evidence that he filed amended tax returns and paid all of his tax liabilities some seventeen months after learning of the criminal investigation against him.  Second, he contends that his trial was rendered fundamentally unfair by the Government's comments in closing argument, which he asserts improperly suggested to the jury that he had never paid his outstanding taxes when, in fact, he had.  We address each of these claims in turn and conclude that there is no basis to overturn Evdokimow's conviction.

_____

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

## I. Background

Defendant David Evdokimow was a plastic surgeon who operated his own practice, De'Omilia Plastic Surgery ("De'Omilia") in northern New Jersey. Starting in 2006, Evdokimow hired two individuals, John Wright and Ginger Sweeton, to help him make financial arrangements to reduce his taxes. Although Evdokimow's prior accountant warned him not to get involved with Wright and Sweeton, he retained them anyway.

Wright, Sweeton, and Evdokimow put in place a scheme in which Evdokimow arranged for the creation of a series of shell corporations to which he transferred proceeds from his practice. Evdokimow then used those funds to pay his personal expenses. The shell corporations were created with the assistance of Evdokimow's friends and employees, who were listed as the corporations' directors and officers and also opened bank accounts in the names of the corporations at Evdokimow's request. Evdokimow also had these associates create signature stamps, which he then used to write checks from the shell corporations' bank accounts and to file tax returns for the corporations. Evdokimow kept the signature stamps in the basement of the house where his parents lived, rather than in his office or his own home. Once Evdokimow transferred money from his practice to the corporations, he claimed those transfers as business expenses on both his personal tax returns and the business tax returns for De'Omilia, thereby reducing his and his practice's taxable income. Evdokimow also paid part of his employees' salaries through checks purportedly written as bonuses or for reimbursement of expenses

3

from which no taxes had been withheld. He also had his patients make checks out to him personally and would cash those checks at banks where either he or a trust in his name had accounts. Evdokimow avoided cashing $10,000.00 or more in checks at any one time to avoid his banks' currency reporting requirements, and did not report that income on his tax returns.

Evidokimow and Sweeton regularly discussed the tax scheme, and Sweeton provided instructions to Evdokimow that explained not only the mechanics of the arrangements, but also that their purpose was to "swap[] money to keep it from being taxable to" him. Suppl. App. 439; 2524. Evdokimow also discussed the tax scheme on multiple occasions with Dr. Augusto DaSilva, who had a similar arrangement with Wright and Sweeton. Evdokimow and DaSilva occasionally used code phrases to discuss Wright and Sweeton. On at least one occasion, an employee with knowledge of the arrangements warned Evdokimow that he risked getting caught if he did not pay more taxes.

In 2008, the Internal Revenue Service ("IRS") audited Evdokimow's 2006 personal tax return. In his response to the audit, Evdokimow made false statements to the IRS agent to support representations in his return. Sweeton also told Evdokimow that she would create documents to substantiate the deductions he had claimed in his returns. Sweeton then created and provided to the IRS false documents that included fake mileage logs to reflect nonexistent business trips and false invoices from the shell corporations to De'Omilia. Based on these materials, the IRS agent found that Evdokimow owed

4

approximately $122,000 in taxes and penalties, which Evdokimow paid. In the wake of the audit, DaSilva, who had also been audited, considered firing Sweeton, at which point Evdokimow told DaSilva that "we know that what we're involved with is bullshit" and "if you're going to the IRS, you're going to go to jail . . . . You have no choice but to continue." Suppl. App. 1274; 1275.

The effect of the scheme was to substantially reduce Evdokimow's tax payments. Between 2006 and 2010, Evdokimow failed to report over $5.95 million in income on his personal tax returns, which resulted in $935,476.00 in unpaid taxes. De'Omilia failed to report over $5.83 million in income over the same period, which resulted in a tax deficiency of more than $2 million.

The Government began a criminal investigation into Evdokimow's taxes in the fall of 2009. Evdokimow became aware of the investigation in January, 2012, when he was served with a subpoena. DaSilva testified at trial that when Evdokimow learned about the investigation, he warned DaSilva about it using coded language and later told DaSilva that he intended to respond by suing Sweeton under the pretense that he knew nothing about his taxes and had merely relied on Sweeton's professional advice. Evdokimow disputed DaSilva's account, testifying that he had not read any of his tax returns until he was subpoenaed in 2012, was not knowledgeable about accounting or bookkeeping, and had depended on Sweeton up to that point.

After he became aware of the investigation, Evdokimow took steps to repay his

tax deficiencies.[1]   He retained lawyers and accountants to assist him to identify his taxable income for the years 2005 through 2013, and did so without the help of Sweeton, who refused to turn over financial documents to him.  Evdokimow filed an amended tax return for 2006 in June 2013, and filed amended returns for the remaining years in September 2013.  Evdokimow accordingly paid all of his tax liability, including penalties and interest, totaling $3,395,394.00.

Evdokimow was indicted on October 15, 2014, and charged in a superseding indictment on August 18, 2015, with one count of conspiracy to defraud the United States by filing false tax returns in violation of 18 U.S.C. § 371, four counts of attempted personal income tax evasion for tax years 2007 to 2010 in violation of 26 U.S.C. § 7201 and 18 U.S.C. § 2, and three counts of attempted corporate income tax evasion for tax years 2008-2010, also in violation of 26 U.S.C. § 7201 and 18 U.S.C. § 2.

Before trial, the Government moved to preclude Evdokimow from presenting evidence that he filed amended tax returns and paid additional taxes after learning of the criminal investigation against him in January, 2012.  The District Court granted the motion in limine with respect to the amended tax returns and payments after oral argument on September 9, 2015.  The District Court concluded that any evidence concerning Evdokimow's subsequent tax payments was "of marginal probative value" that was "substantially outweighed by its potential for prejudice and confusion to the

---

[1] Because the District Court precluded Evdokimow from testifying regarding the remedial steps he took after receiving the subpoena in 2012, our recitation of these facts relies on counsels' proffers of what the evidence would show, were it to be admitted.

6

jury." App. 156. The Court reasoned that, while subsequent payments "could have probative value," the "delay of at least 18 months" between the point when Evdokimow learned of the investigation and when he filed his amended returns eliminated any such value in this case. App. 157. The Court further concluded that the eventual payment of the taxes was "potentially confusing to the jury" and created a risk of jury nullification that was "potentially uncurable . . . by even a careful instruction as to render it admissible" because it opened the prospect of the defendant "argu[ing] to the jury that [he] pay[s] [his] taxes like anybody else." App. 157-58. Evdokimow sought reconsideration of the District Court's decision on the first day of trial, but the request was denied.

After a twelve-day trial, the Government, in its summation, described Evdokimow's conduct at several points in terms of the "tax loss" that he had caused. The Government also argued that Evdokimow had benefited from and "saved" millions of dollars by underpaying his taxes. Evdokimow objected to these comments, arguing that they misleadingly suggested to the jury that he still had tax obligations outstanding, when in fact he had satisfied the tax debt before he was indicted. As a remedy, Evdokimow requested that the District Court instruct the jury that he had paid his tax obligations after learning about the investigation, which he conceded was a fact not in evidence. The Court denied the request, but instructed the Government to be careful in rebuttal to make clear that the issue before the jury related only to the time period covered by the indictment. In rebuttal, the Government mentioned Evdokimow's wealth and ability to

pay his taxes between 2006 and 2012, and argued that "[s]ometimes people that have a lot of money are willing to commit crimes to get more. And that's what happened here." App. 326-27.

The jury found Evdokimow guilty on all counts on November 18, 2015. Evdokimow moved for judgment of acquittal or for a new trial under Federal Rules of Criminal Procedure 29 and 33. The Court heard argument on and denied the motions on February 16, 2017, and sentenced Evdokimow to 36 months' imprisonment and a $96,000.00 fine on the same day.

## II. Analysis[2]

### A. Exclusion of Evidence of Subsequent Tax Payments

Evdokimow asserts that the District Court erred by excluding evidence that he filed amended tax returns and paid his tax debt after he learned he was under investigation. Evidentiary rulings are generally reviewed for abuse of discretion.[3] *United*

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction over Evdokimow's appeal pursuant to 28 U.S.C. § 1291.

[3] Evdokimow urges us to exercise plenary review over this claim, arguing that the District Court grounded its ruling on a misinterpretation of our decision in *United States v. Stoehr*, 196 F.2d 276 (3d Cir. 1952), which amounts to legal error. Specifically, Evdokimow argues that the District Court misread *Stoehr* to erroneously apply "a presumption *against* admitting" evidence of his subsequent tax payments, when *Stoehr* in fact favors admission of such evidence, and seems to argue that the District Court erroneously read *Stoehr* to require exclusion of such evidence in every case. Appellant's Br. at 21. This argument mischaracterizes the District Court's ruling. The District Court clearly did not read *Stoehr* to require exclusion of that evidence as a matter of law. Moreover, while the District Court referenced *Stoehr*, it did not rely on *Stoehr* for its analysis, but rather applied the standard for exclusion of potentially relevant evidence established by Federal Rule of Evidence 403. We therefore conclude that the District

*States v. Friedman*, 658 F.3d 342, 352 (3d Cir. 2011) (citation omitted). The District Court's discretion is "construed especially broadly in the context of [Federal] Rule [of Evidence] 403."[4] *United States v. Sussman*, 709 F.3d 155, 173 (3d Cir. 2013) (quoting *United States v. Mathis*, 264 F.3d 321, 326-27 (3d Cir. 2001)). "[W]hen a court engages in a Rule 403 balancing and articulates on the record a rational explanation, we will rarely disturb its ruling." *United States v. Finley*, 726 F.3d 483, 491 (3d Cir. 2013) (quoting *United States v. Sampson*, 980 F.2d 883, 889 (3d Cir. 1992)).

Evdokimow argues that we should not utilize this deferential standard of review because the District Court failed to sufficiently explain its Rule 403 analysis. As we explained in *Finley*, we have found that courts failed to properly perform this analysis where they have "failed to mention anything about probative value or prejudice surrounding particular evidence." *Id.* (citations omitted). We have also held that trial courts have failed to sufficiently explain their analyses when the "reasoning underlying the Court's Rule 403 balancing [is] not apparent from the record" or when the courts "merely recite[] the text of the rule." *United States v. Caldwell*, 760 F.3d 267, 284 (3d Cir. 2014) (quotation omitted); *see, e.g.*, *United States v. Palma-Ruedas*, 121 F.3d 841, 852 (3d Cir. 1997) *rev'd on other grounds United States v. Rodriquez-Moreno*, 526 U.S.

---

Court's ruling on the Government's motion in limine was an evidentiary ruling applying Rule 403, and we review the District Court's ruling for abuse of discretion.

[4] Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

275 (1999) (explanation insufficient where court "merely stated a conclusion that the probative value of the evidence outweighed its prejudicial effect"); *Sampson*, 980 F.2d at 889 (reversing where "[t]he record [did] not disclose a Rule 403 balancing"); *Gov't of Virgin Islands v. Pinney*, 967 F.2d 912, 918 (3d Cir. 1992) (reversing because "the trial court did not explain why it was denying defendant's motion under Rule 403"). However, courts are not required to write a treatise on every motion in limine; even in situations where "a more detailed explanation from the District Court would have been helpful," we will evaluate the Court's ruling for abuse of discretion so long as "we are able to see that the District Court conducted a Rule 403 analysis." *Finley*, 726 F.3d at 491.

Here, the District Court ruled on the motion in limine only after hearing substantial argument and receiving thorough briefing from the parties concerning the evidence that the Government sought to preclude. In the course of its ruling, the Court articulated its assessments of both probative value and prejudicial effect: it explained that it found that the delay in filing amended returns reduced the probative value of that evidence to demonstrate Evdokimow's earlier mental state, and described its concern that evidence of tax payments made years after the period charged in the Indictment would confuse the jury and raise the prospect of nullification. Such analysis is sufficient to enable us "to see that the District Court conducted a Rule 403 analysis" and assess it on appeal. *Id.*

Evdokimow next argues that the District Court erred in its application of our

10

decision in *United States v. Stoehr*, 196 F.2d 276 (3d Cir. 1952), to assess the probative value of the evidence of his amended returns and tax payments. *Stoehr*, like the instant case, involved a defendant charged with and convicted at trial of willful tax evasion, who maintained in his defense that his tax payments had been made in good faith reliance on the advice of others. *Id.* at 279. The defendant sought to admit evidence showing that, fifteen months after being confronted about the fraud, he offered a compromise payment to the government in exchange for the release of all liability. *Id.* at 282. The lower court excluded this evidence; we affirmed, noting that while evidence of a prompt amended filing and payment of additional tax might have been admissible, in the case at issue the trial court could have reasonably concluded that the fifteen-month delay "destroyed whatever slight probative value a prompt offer might have had."[5] *Id.* at 283.

The District Court in this case reached a similar conclusion, ruling that Evdokimow's remedial tax payments, made seventeen or more months after he purportedly learned of the fraud, were of "marginal probative value" regarding his intent

---

[5] Contrary to the assertions of the dissent, *Stoehr* does not "indicate[] that evidence of remedial actions should generally be admitted." Dissenting Op. at 3. Rather, we emphasized in *Stoehr* that district courts "must consider the circumstances of the individual case" when making these determinations. *Stoehr*, 196 F.2d at 282. And in the sixty-five years since *Stoehr* was decided, other courts have agreed with that notion, becoming, if anything, more skeptical of the evidence's admissibility. *See, e.g.*, *United States v. Beavers*, 756 F.3d 1044, 1050 (7th Cir. 2014) ("[S]ubsequent remedial actions may not be probative of the defendant's prior state of mind because such actions are equally consistent with (1) promptly correcting a genuine mistake and (2) trying to cover up a purposeful lie in the hope of avoiding prosecution."); *United States v. Radtke*, 415 F.3d 826, 841 (8th Cir. 2005) ("little, if any, probative value in . . . amended filing"); *United States v. Pang*, 362 F.3d 1187, 1194 (9th Cir. 2004) ("[E]vidence of belated tax payments, made while awaiting prosecution, is irrelevant.").

11

at the time he filed his original tax returns. App. 156. The District Court cited our decision in *Stoehr*, noting that we had both endorsed the position that subsequent remedial actions could be of some evidentiary value to prove a defendant's earlier good faith, and held that a significant delay in taking those actions could weaken or destroy any such value. Evdokimow argues that the District Court erroneously focused on the seventeen-month gap between the time he learned of the Government's investigation and the time he filed his first amended tax return, and that it failed to consider his intermediate remedial steps, which, he argues, amount to the kind of prompt attempts to address his liability that the *Stoehr* Court thought might be admissible. In fact, however, the District Court acknowledged that Evdokimow's proffered evidence included the steps he took to investigate and reconstruct his income during the intervening seventeen months. It is clear from the questions the Court asked during the hearing that it considered the probative value of all of the steps Evdokimow took after learning of the Government's investigation, including those taken before he ultimately filed amended returns. The District Court simply concluded that all of that evidence was of limited probative value that was substantially outweighed by the risk of jury confusion. In light of the "very substantial discretion" we afford such conclusions, we cannot say this ruling was an abuse of discretion simply because some jurists might possibly come to a "differing view of the highly subjective factors of (a) the probative value, or (b) the prejudice presented by the evidence." *United States v. Long*, 574 F.2d 761, 767 (3d Cir. 1978). We therefore hold that the District Court provided a rational explanation for its

12

ruling, and did not abuse its discretion in granting the motion in limine.

Even if the District Court had abused its discretion, we are nonetheless convinced that any error was harmless. Errors in evidentiary rulings will not be reversed when "it is highly probable that the error did not affect the result." *United States v. DeMuro*, 677 F.3d 500, 557 (3d Cir. 2012) (quoting *United States v. Friedman*, 658 F.3d 342, 352 (3d Cir. 2011)). Errors are harmless when "we have a sure conviction that the error did not prejudice the defendant[]," *United States v. Stadtmauer*, 620 F.3d 238, 266 (3d Cir. 2010) (alteration in original) (quotation omitted), and we will not reverse when the other evidence in the record of the defendant's guilt is overwhelming, see *United States v. Christie*, 624 F.3d 558, 571 (3d Cir. 2010) (evidentiary error was harmless "given the truly overwhelming quantity of legitimate evidence against" the defendant).

Evdokimow argues that the evidence that he eventually paid his taxes is highly relevant to the issue of his intent when he filed his original, false returns, and that, consequently, the exclusion of that evidence prejudiced his defense that his original filings were made in good faith. However, the exclusion of evidence regarding Evdokimow's subsequent tax payments did not prevent him from putting on his defense. Evdokimow presented a thorough good-faith defense to the jury, which heard his account that he had deferred entirely to Sweeton for the preparation of his tax returns; that he had not looked closely at his returns and was unaware of any fraud until he received a subpoena; that he has since hired a new accountant; and that he cooperated with both the Government's investigation and the earlier IRS audit.

13

The jury also heard extensive evidence that contradicted Evdokimow's account that he was unaware of and uninvolved in the tax fraud.[6] Alexandra Lehr, Evdokimow's former office manager, testified that he ignored warnings from his former accountant not to involve himself with Wright and Sweeton. Grigor Damyanov and Christine Chamberlain testified that Evdokimow was personally involved in recruiting them to open bank accounts that were used in the scheme. Agent Valenti, the lead case agent, DaSilva, Damyanov, Chamberlain, and Lehr all testified that Evdokimow used stamps of other people's signatures to write checks to pay his personal expenses. Agent Valenti, Lehr, DaSilva, and Ilda Pereira, the branch manager at one of Evdokimow's banks, all testified that he had patients make checks out to him personally and cashed them in amounts below currency reporting requirements. DaSilva also testified that Evdokimow communicated with him in code about both the scheme and the government investigation. He also testified that Evdokimow admitted to him that they were "involved" in "bullshit" for which they could "go to jail." Suppl. App. 1274, 1275. Given this overwhelming evidence that Evdokimow engaged in the tax fraud scheme willfully and the fact that Evdokimow was able to present a thorough good-faith defense to the jury, we hold that, even if the District Court had abused its discretion in excluding the subsequent tax payments, any error in excluding such evidence would have been harmless.

---

[6] After a conviction on a jury verdict, we view the evidence in the light most favorable to the Government. *United States v. Hoffecker*, 530 F.3d 137, 146 (3d Cir. 2008) (citing *United States v. Wood*, 486 F.3d 781, 783 (3d Cir. 2007)).

14

**B. The Government's Comments in Closing Argument**

Evdokimow claims that the Government made prejudicial comments in its closing argument that violated his Fifth Amendment right to due process by implying to the jury that his tax debt remained outstanding at the time of trial when, in fact, he had paid his deficiencies before he was indicted. Evdokimow objected to some of these comments after the Government's summation and in a motion for a new trial.[7]

"We review a district court's ruling on contemporaneous objections to closing arguments for abuse of discretion." *United States v. Berrios*, 676 F.3d 118, 134 (3d Cir. 2012) (citing *United States v. Lore*, 430 F.3d 190, 210 (3d Cir. 2005)). Similarly, "[t]he 'decision to grant or deny a motion for a new trial lies within the discretion of the district court.'" *United States v. Vitillo*, 490 F.3d 314, 325 (3d Cir. 2007) (quoting *United States v. Cimera*, 459 F.3d 452, 458 (3d Cir. 2006)). The Court exercises plenary review, however, over the underlying legal question of whether a defendant's Fifth Amendment right to a fair trial has been infringed. *United States v. Liburd*, 607 F.3d 339, 342 (3d Cir. 2010) (citing *United States v. Dees*, 467 F.3d 847, 854 (3d Cir. 2006)). When reviewing a claim that a prosecutor's remarks violated a defendant's Fifth Amendment right to a fair trial, "we first determine whether those remarks constituted misconduct." *Gov't of the*

---

[7] Evdokimow conceded at oral argument that he did not object below to at least some of the comments he now objects to on appeal. Oral Arg. at 24:27 (argued October 26, 2017). Unpreserved errors are subject to plain error review. *Gov't of the Virgin Islands v. Mills*, 821 F.3d 448, 456 (3d Cir. 2006). However, we need not decide which comments were preserved for appeal because we conclude, for the reasons set forth below, that none of these comments amounted to a denial of due process. Consequently, they would not merit reversal even if they were all objected to below.

*Virgin Islands v. Mills*, 821 F.3d 448, 456 (3d Cir. 2016) (citing *Berrios*, 676 F.3d at 134-36) (additional citation omitted). "If so, we proceed to determine whether that misconduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process' . . . taking into account 'the entire proceeding.'" *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); and *Liburd*, 607 F.3d at 344) (additional citation omitted).[8]

Evdokimow challenges six comments made by the Government during its closing and one made during its rebuttal. These comments fall into two categories. First, Evdokimow objects to the Government's use of the word "loss" to describe the amount of taxes that he evaded paying prior to learning of the Government's investigation. The Government showed two demonstrative summary exhibits during its closing, which had been admitted into evidence without objection, and which set out the personal and business income that went unreported for each of the years at issue, as well as the additional taxes owed on those unreported amounts. At two points in its closing argument, the Government referred to these exhibits as setting forth the "tax loss" in the case.[9] Second, Evdokimow objects to the Government's argument that he "saved"

---

[8] Courts normally assess whether errors of criminal procedure were harmless, Fed. R. Crim. P. 52, and the parties debate the precise standard of harmless error that should apply here. However, this Court has previously explained that, on direct appeal, the harmless error inquiry is subsumed "within our inquiry into whether the misconduct resulted in an unfair trial." *Mills*, 821 F.3d at 460 n.11 (citations omitted).

[9] App. at 315 ("You have on that issue, ladies and gentlemen, two summary exhibits in evidence, Government Exhibit 111 and 112, and they set forth the tax loss numbers in this case."); 316 ("And you will see for each of those years, there's an

money by virtue of his tax scheme. At several points during its summation, the Government described both the motivations for and substance of Evdokimow's actions as "saving" or "benefiting" himself in the amount of millions of dollars.[10] The Government also told the jury in its rebuttal that Evdokimow "could have paid his taxes between 2006 and 2012," but that "[s]ometimes people that have a lot of money are willing to commit crimes to get more. And that's what happened here." App. 326-27.

Evdokimow argues that these comments, taken together, falsely and improperly implied to the jury that he had never paid the taxes at issue in the trial, when, in fact, he had. He argues that creating this implication amounted to misconduct because the suggestion was a) an improper appeal to the jurors' emotions based on their individual interests as taxpayers, and b) false and not supported by the evidence at trial. *See Mills*, 821 F.3d at 458 (stating that prosecutors "may not cross the line and invite the jury to render a decision on grounds of bias, passion, prejudice, or sympathy"); *United States v. Rivas*, 493 F.3d 131, 139 (3d Cir. 2007) (stating that prosecutors "cannot make

additional tax owing of between $150,000 and $404,000, again, plainly a substantial tax loss to satisfy the first element of tax evasion.").

[10]App. at 313 ("Between 2006 and 2010, he concealed approximately $5.8 million in taxable income from the IRS, and the scheme benefited him to the tune of millions of dollars."); 314 ("Now, why did the defendant do this? Money. As a result of this scheme, he saved himself millions of dollars and had approximately $5.8 million of his personal expenses spent."); 317 (arguing that the Government had proved the requisite state of mind based on "the fact that [Evdokimow]'s the one who saved millions of dollars in taxes by underreporting the vast majority of his taxable income"); 318 ("And yet despite all that bad luck on the defendant's part, he was lucky enough to have saved himself—to have had $5.8 million of his personal expenses paid and saved himself millions of dollars in taxes.").

17

arguments unsupported by the record evidence") (citations omitted). For the purposes of this appeal, we will assume *arguendo* that the Government's references to "loss" and "savings" suggested or raised an inference that Evdokimow had never paid his taxes, and therefore amounted to misconduct. We must then determine whether these comments so infected the entire proceeding with unfairness as to amount to a denial of due process. *Mills*, 821 F.3d at 456 (quotation and citations omitted). For the reasons that follow, we conclude that they do not.

To determine whether misconduct by the Government amounts to a denial of due process, we assess "the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." *Id.* at 461 (quoting *United States v. Lee*, 612 F.3d 170, 194 (3d Cir. 2010)). Consequently, in our examination of the allegedly improper statements made by the Government during its closing argument, we consider first, the severity of the comments and their pervasiveness in light of the entire closing argument; second, the District Court's instructions on the role of lawyers' arguments and the elements of the offenses; and third, the strength of the evidence against Evdokimow. *See id.* at 462-63.

The seven comments to which Evdokimow objects were made in the course of seventy-two pages of closing and rebuttal argument by the Government. Even though we assume that these comments encouraged an impermissible inference, we find that they were not sufficiently severe or prevalent to infect the entirety of the proceedings with unfairness, as they were made in passing in the course of lengthy argument and did not

18

explicitly state the improper premise (i.e., that Evdokimow had never paid his tax debt). *Compare id.* at 462 (stating that argument that jurors would only be safe in their homes if they convicted the defendant was severe misconduct), *and Moore v. Morton*, 255 F.3d 95, 116-18 (3d Cir. 2001) (stating that closing arguments in a rape case that failure to believe a victim witness would "perpetrate[] a worse assault on her" and that jury could infer the defendant had a race-based "preference" based on the race of his wife were too severe to be cured by the trial court's instructions), *with Berrios*, 676 F.3d at 135 (concluding that "a mere ten lines [of objectionable argument] out of over seventy-five pages of closing argument" did not merit reversal (citations omitted)). We therefore conclude that the lack of pervasiveness and severity of these seven comments weighs against a finding that the comments infected the fairness of the entire proceeding.

In addition, the District Court provided the jury with a number of instructions on the significance of the lawyers' arguments, the elements of the charged offenses, and the jury's obligation to reach a decision based only on the facts and the law. In assessing the potential prejudice of a prosecutor's challenged comments, we must consider the comments in light of the District Court's instructions to the jury in the full jury charge. *See Mills*, 821 F.3d at 462-63 (finding that the admonition that the lawyers' arguments are not evidence and the "clear and complete jury instruction on the elements" weighed against a finding of fundamental unfairness even when the District Court had not specifically addressed the prosecutor's improper statements (quoting *Edward v. City of Philadelphia*, 860 F.2d 568, 574 (3d Cir. 1988))); *Berrios*, 676 F.3d at 135-36 (stating

19

that instructions given to the jury "to base its judgment on the evidence" and that "arguments by counsel do not constitute evidence" were an "adequate response" to the possibility of prejudice created by misconduct in the prosecutor's closing statement). Although the District Court denied Evdokimow's specific request that it tell the jury that he had already paid his outstanding tax debt, the Court did charge the jury at the end of trial that it should decide the case based on the evidence and not on sympathy or bias, and that the arguments of counsel were not evidence. The District Court also gave full instructions on the elements of each offense with which Evdokimow was charged, which included the instruction that, in order to prove the existence of a tax deficiency, "[t]he Government [was] required to establish only that the defendant owed a substantial amount of income tax *during the years in question*, regardless whether it is more or less than the amount set forth in the indictment." Suppl. App. 2265 (emphasis added). Such instructions, which we presume the jury followed, *Mills*, 821 F.3d at 463 (citing *Richardson v. Marsh*, 481 U.S. 200, 206 (1987)), served to clarify that nothing the Government said during its closing should be taken to imply the existence of facts not established through the evidence admitted at trial and that the only relevant period of inquiry for the jury was the period of years charged in the indictment. We therefore conclude that the instructions given were sufficient to address any potential prejudice from the seven comments to which Evdokimow objects.

The final consideration we weigh in evaluating whether any improper comments by the Government rendered the trial fundamentally unfair is the "strength of the

20

evidence against the defendant." *Id.* at 463 (citing *Darden v. Wainwright*, 477 U.S. 168, 182 (1986) (additional citations omitted)). Because Evdokimow did not dispute that he had underreported his taxes, but instead maintained that he had done so in good faith reliance on his financial advisors, the central question at trial was Evdokimow's mental state. As described above, the jury heard overwhelming evidence of Evdokimow's knowledge of and willful involvement in the tax scheme with which he was charged. Moreover, the comments at issue characterized evidence that the jury had already encountered during the trial, such as the loss summary charts and accounts of Evdokimow's personal spending. *See United States v. Gambone*, 314 F.3d 163, 179 (3d Cir. 2003) ("[W]e have held that probative evidence on the same issue as improper remarks may mitigate prejudice stemming from those remarks." (citations omitted)). Because "the jury was presented with ample evidence on which it could convict" Evdokimow, we conclude that any misconduct in the Government's argument did not impact the jury's verdict. *Berrios*, 676 F.3d at 136. In light of the trial as a whole, and upon consideration of the severity of the comments, the effect of the District Court's instructions, and the weight of the evidence, we hold that the seven comments to which Evdokimow objects did not render Evdokimow's trial fundamentally unfair and, therefore, did not constitute a denial of due process.

Accordingly, because we find that the Government's comments in the course of its closing argument did not result in a denial of due process, we further find the District Court did not abuse its discretion by overruling his objections to those comments,

21

denying his request for a jury instruction that he paid his taxes prior to his indictment, and denying his motion for a new trial. It is clear from the record that the District Court considered Evdokimow's various objections. The District Court explained, however, that the prosecutorial statements were not "so misleading or incomplete in light of [its] rulings as to require any remedy or instruction." Suppl. App. 2179. It also stressed that tax deficiency was an element of the offense, which the Government was entitled to address in summation. And importantly, the District Court explained that a curative instruction "would only cloud and make murky" what the jury should have already known—that the time period at issue was from 2006 to 2012. Suppl. App. 2182. Under these circumstances, there is no basis to hold that the District Court abused its discretion in declining to issue an instruction or grant a mistrial.

## IV. Conclusion

For the foregoing reasons, we conclude that the District Court did not abuse its discretion by excluding evidence that Evdokimow eventually paid his outstanding tax debt, and also did not abuse its discretion by overruling his objections to the Government's comments in its closing argument, denying his request for a jury instruction, and denying his motion for a new trial. We will therefore affirm the judgment of the District Court.

*United States v. Evdokimow,* No. 15-3876.

COWEN, *Circuit Judge,* dissenting.

The District Court committed reversible error by preventing Evdokimow from presenting—in his defense to criminal charges that he "willfully" failed to report and pay his taxes—evidence that he actually filed amended tax returns and paid his tax liability in its entirety after learning of the criminal investigation. I also conclude that the trial was rendered fundamentally unfair because the government repeatedly suggested in its closing argument that he had never paid his taxes. Accordingly, I must respectfully dissent.

Initially, the District Court erred by excluding Evdokimow's evidence of subsequent amended tax returns and tax payments. In short, the District Court's reasoning is inconsistent with the approach to evidence of remedial actions that we set forth in United States v. Stoehr, 196 F.2d 276 (3d Cir. 1952). I also believe that we should not defer to the District Court's ruling because it failed to engage in the requisite "on-the-record" balancing.

The majority is correct that evidentiary rulings are generally reviewed for abuse of discretion and that this discretion is construed especially broadly in the Rule 403 context. See, e.g., United States v. Sussman, 709 F.3d 155, 173 (3d Cir. 2013). While we rarely disturb a district court's ruling, such deference is only appropriate if the district court "'engages in a Rule 403 balancing and articulates on the record a rational explanation'"

1

for its disposition.  United States v. Finley, 726 F.3d 483, 491 (3d Cir. 2013) (quoting

United States v. Sampson, 980 F.2d 883, 889 (3d Cir. 1992)).  "We have also held that

trial courts have failed to sufficiently explain their analyses when the 'reasoning

underlying the Court's Rule 403 balancing [is] not apparent from the record' or when the

courts 'merely recite[] the text of the rule.'"  (Maj. Op. at 9-10 (quoting United States v.

Caldwell, 760 F.3d 267, 284 (3d Cir. 2014)).)  "[W]e do not afford that court the

deference normally afforded when we review for abuse of discretion if the district court

failed to engage in on-the-record balancing" (and, in such cases, we either remand or

undertake the balancing ourselves where practical).  United States v. Bailey, 840 F.3d 99,

117 (3d Cir.), cert denied, 137 S. Ct. 839 (2017).  It is also critical not to overlook the

language of Rule 403 itself, which provides that the court may exclude relevant evidence

if its probative value is "substantially outweighed" by the danger of unfair prejudice,

confusing the issues, or misleading the jury.  See, e.g., Blancha v. Raymark Indus., 972

F.2d 507, 516 (3d Cir. 1993) (noting that Rule 403 should be used sparingly because

evidence is concededly probative and balance should be struck in favor of admissibility).

Stoehr provides (as the government puts it) "definitive guidance" on the issue

before us (Appellee's Brief at 15), and the District Court accordingly looked to what it

characterized as "the only clear precedent from the Third Circuit on this issue" (SA41).

While obviously predating Rule 403 itself, our 1952 ruling appears to anticipate the rule's

basic approach to admissibility.  In this tax evasion case, we observed that some courts

2

have displayed increased liberality in prosecutions for crimes involving fraudulent intent with respect to the admission of the defendant's subsequent statements and conduct. Stoehr, 196 F.2d at 282. We agreed with the principle expressed by Judge Learned Hand in Matot—"so long as evidence does not confuse the jury, its exclusion merely because of logical remoteness from the issue is always a hazard and is usually undesirable." Id. (addressing United States v. Matot, 146 F.2d 197, 198 (2d Cir. 1944)). Such "a rule of liberality" does not render admissible every subsequent self-serving act of the defendant, and the district court must consider the circumstances of each individual case. Id. But the district court must ask: "Is the evidence of defendant's subsequent mental state (which evidence is supplied by the subsequent act) of any probative value in establishing his state of mind at the time of the alleged criminal acts, and if so, does the evidence not unduly entangle the issues or confuse the jury?" Id. (citing 6 Wigmore on Evidence § 1732). As the majority points out, this Court ultimately upheld the district court's exclusion of evidence showing that, fifteen months after being confronted with his tax fraud, Stoehr offered to make a compromise payment in exchange for the release of all liability. Id. at 282-83. However, the Stoehr Court also noted that "evidence of a prompt amended filing and payment of additional tax might have been admissible." (Maj. Op. at 11.) "If the defendant here had promptly filed an amended return and made payment of the additional sum owed, we think such evidence might very well have been admissible." Id. (discussing Heindell v. United States, 150 F.2d 493, 497 (6th Cir. 1945)). At the very

3

least, Stoehr and its rule of liberality indicated that evidence of remedial actions should generally be admitted.

In this case, the District Court essentially turned this precedent "on its head." Initially, the District Court did "rely on Stoehr for its analysis." (Id. at 9 n.3.) In addition to acknowledging our ruling as the only clear Third Circuit precedent on this issue and referencing our rule of liberality, it appropriately recognized that Stoehr "agrees with the principle, the principles behind this rule of liberality in allowing such evidence." (SA41.) Evidence of a subsequent mental state "could have probative value in establishing the defendant's state of mind at the time of the alleged criminal act." (Id.) However, the District Court also referred to the absence of "a blanket exclusion of evidence of such subsequent mental state." (Id.) More importantly, the District Court explained that the evidence "could have probative value" but "here the, similar to Stoehr, the lack of a timely filing of an amended return and the payment of such fines takes it out of the, takes this case out of the exception that Stoehr might allow for such admissibility." (SA42.) It thereby treated the admission of subsequent remedial actions as an exception, implying that there is a presumption against the admission of such evidence. Such an approach is contrary to our "rule of liberality," the notion that the exclusion of such evidence merely because of logical remoteness is "always a hazard and is usually undesirable," and our recognition of the fact that evidence of a promptly filed amended tax return and tax

4

payment "might very well have been admissible." Id. at 282-83 (footnote omitted). In other words, admission is the "rule"—and not the "exception."

Similarly, the District Court never really addressed in its ruling the differences between the circumstances of Stoehr's compromise offer, on the one hand, and Evdokimow's subsequent filing of amended tax returns, his unconditional payment of his full tax liability, and his explanation for why it took at least seventeen months for him to take these particular remedial steps after he had received the subpoena, on the other hand. It is uncontested that whether a defendant acts promptly must be assessed based on the specific circumstances. See, e.g., id. at 282. While the majority points to the questions the District Court asked counsel during the hearing, the District Court never discussed or even acknowledged in its actual decision the evidence that Evdokimow "retained lawyers and accountants to assist him to identify his taxable income for the years 2005 through 2013, and did so without the help of Sweeton, who refused to turn over financial documents to him" (Maj. Op. at 6). In contrast, Stoehr made his offer of compromise approximately fifteen months after "his newly retained accountant had informed him of the amount of taxes due the government." Id. at 283. The District Court also failed to take into account the fact that Stoehr did not file an amended return—and did not actually pay the money he owed. Id. Instead, Stoehr made a compromise offer "in return for a release of 'all criminal and/or civil liability' for the years involved." Id. at 282 (footnote omitted). Evdokimow paid the government—without any condition or other "strings

5

attached"—his entire tax liability, including penalties and interest, amounting to $3,395,394.00.

Taking into account the other side of the Rule 403 inquiry, I similarly conclude that the District Court did not undertake the requisite "on-the-record" balancing. I acknowledge that the District Court heard lengthy argument on this evidentiary question, engaged counsel on the issues of confusion and nullification (as well as probative value and Stoehr itself), and rendered a relatively lengthy ruling on the record (and returned to this question again in its denial of Evdokimow's motion for reconsideration as well as its decision denying his motion for an acquittal or a new trial). Yet, given our rule of liberality and the probative value of his amended tax returns and tax payments, see, e.g., id. at 282-83 ("If the defendant here had promptly filed an amended return and made payment of the additional sum owed, we think such evidence might very well have been admissible." (footnote omitted)), this is not a case where "a relatively minor risk of substantial undue prejudice should counsel against admitting [the evidence]," Bailey, 840 F.3d at 119. The District Court, in turn, did not explain its concerns about jury confusion and nullification or articulate how such considerations substantially outweighed the probative value of the evidence. See, e.g., Caldwell, 760 F.3d at 284 ("This statement [i.e., 'because knowledge and intent are at issue here, they are more probative than prejudicial' and 'the probative value outweighs any prejudicial effect'] is nothing more than a bare recitation of Rule 403, with an added notation about the Court's

6

understanding that knowledge is at issue in the case."). As to jury nullification, the District Court stated that "[i]t would simply be every criminal defendant's option in a tax case to figure out what I should have paid a long time ago and pay it and just argue to the jury that I pay my taxes like anybody else." (SA43.) However, it never explained why the district judge could not simply bar defense counsel from making such an unacceptable appeal to the jurors. Likewise, wouldn't appropriate jury instructions be more than sufficient to guard against possible nullification and clear up any confusion regarding the applicable time period? In fact, the District Court instructed the jury as to the obligation to apply the law it gave to the facts. "You must apply the law that I give to you, whether you agree with it or not." (SA2249.) The District Court also told the jury that, when it allowed evidence for a limited purpose only, "I instructed you to consider that evidence only for that limited purpose, and you must do that." (SA2251.) The jury then could have been instructed that it "only consider subsequent [amended tax returns and tax payments] to the extent they bore upon the defendant's state of mind when the [original] returns were filed—but that if the defendant possessed the required criminal intent at the time the false returns were filed, repayment would not absolve him." (Appellant's Reply Brief at 15 (citation omitted).)

In addition, Evdokimow asserts that the government made prejudicial comments in its closing argument by implying that his tax liability remained outstanding even though he had paid his outstanding taxes, penalties, and interest more than a year before

7

his indictment.[1]  As the majority observes, "we first determine whether those remarks constituted misconduct."  Gov't of the V.I. v. Mills, 821 F.3d 448, 456 (3d Cir. 2016) (citing United States v. Berrios, 676 F.3d 118, 134-36 (3d Cir. 2012); United States v. Lee, 612 F.3d 170, 194 (3d Cir. 2010)).  At the very least, prosecutors "cannot make arguments unsupported by the record evidence."  United States v. Rivas, 493 F.3d 131, 139 (3d Cir. 2007) (citing United States v. Dispoz-O-Plastics, Inc., 172 F.3d 275, 285 (3d Cir. 1999); United States v. Pelullo, 964 F.2d 193 (3d Cir. 1992)).  The majority assumes arguendo that the government's references "suggested or raised an inference that Evdokimow had never paid his taxes, and therefore amounted to misconduct" (and then decided that these comments did not result in an unfair trial amounting to a denial of due process).  (Maj. Op. at 18.)  However, I believe that the government's comments did improperly suggest or imply that Evdokimow still had not paid his taxes—which was simply not true.  After all, the government repeatedly referred to its loss and Evdokimow's gain, e.g.:

> "[H]e concealed approximately $5.8 million in taxable income from the IRS, and the scheme benefited him to the tune of millions of dollars" (SA2125); "Now, why did the defendant do this?  Money.  As a result of

---

[1] Evdokimow admits that he did not object below to some of the comments he now challenges on appeal.  However, the government acknowledges that "Evdokimow argued that the language used by the Government insinuated to the jury 'that the government missed out on taxes' or 'suffered and lost money,' which was not true because Evdokimow amended his returns and paid those taxes."  (Appellee's Brief at 43 (quoting SA2177).)  The District Court considered but rejected this argument on its merits.

8

this scheme, he saved himself millions of dollars and had approximately $5.8 million of personal expenses spent" (SA2126); "they [Exhibits 111 and 112] set forth tax loss numbers in this case" (SA2137); "there's an additional tax owing of between $150,000 and $404,000, again, plainly a substantial tax loss" (SA2138); "[y]ou know from the fact that he's the one who saved millions of dollars in taxes by underreporting the vast majority of his taxable income" (SA2139); and "he was lucky to have saved himself—to have had $5.8 million of his personal expenses paid and saved himself millions of dollars in taxes" (SA2168).

Such statements indicated that the loss and gain were permanent or at least on-ongoing in nature. The District Court itself expressed concern about the term "tax loss," observing inter alia that "loss sounds more permanent than deficiency" and "[p]erhaps 'loss' is not a good word to use." (SA2180-SA2181.)

Finally, I consider whether the erroneous exclusion of Evdokimow's evidence of amended tax returns and tax payments as well as the inappropriate comments rise to the level of reversible error. Evidentiary rulings are subject to a harmless error standard of review. See, e.g., United States v. DeMuro, 677 F.3d 550, 557 (3d Cir. 2012). We must reverse unless it is highly probable that the error did not affect the result. See, e.g., id. As the majority notes, errors are harmless if "'we have a sure conviction that the error did not prejudice the defendant,'" United States v. Stadtmauer, 620 F.3d 238, 266 (3d Cir. 2010) (quoting United States v. Jannotti, 729 F.2d 213, 220 n.2 (3d Cir. 1984)), and we will not reverse when the record includes truly overwhelming evidence of guilt, see, e.g., United States v. Christie, 624 F.3d 558, 571 (3d Cir. 2010). However, I further note that it is not enough for us to find that it is more likely than not that the error was harmless.

9

See, e.g., Jannotti, 729 F.2d at 220 n.2. According to the majority, any evidentiary error was harmless given the "overwhelming evidence that Evdokimow engaged in the tax fraud scheme willfully and the fact that Evdokimow was able to present a thorough good-faith defense to the jury." (Maj. Op. at 14). Similarly, it concluded that any misconduct by the government did not amount to a denial of due process on account of the comments' relative lack of pervasiveness and severity, the jury instructions, and the weight of the evidence.

I do not agree. Simply put, the District Court's evidentiary ruling effectively gutted the defense he wished to present to the jury. The government must prove that the defendant acted willfully. See, e.g., Boulware v. United States, 552 U.S. 421, 424 n.2 (2008). The District Court instructed the jury that "[w]illfully means a voluntary and intentional violation of a known legal duty." (SA2268.) "The defendant's conduct was not willful if he acted through negligence, mistake, accident, or due to a good faith misunderstanding of the requirements of the law" (id.). See, e.g., DeMuro, 677 F.3d at 557. While the government did present a strong case against Evdokimow, there was clearly evidence to support his claim that he did not act willfully and was instead the victim of a scam perpetrated by Sweeton. "Evdokimow presented a thorough good-faith defense to the jury, which heard his account that he had deferred entirely to Sweeton for the preparation of his tax returns; that he had not looked closely at his returns and was unaware of any fraud until he received a subpoena; that he has since hired a new

10

accountant; and that he cooperated with both the Government's investigation and the earlier IRS audit." (Maj. Op. at 13-14.) Obviously, evidence that he went so far as to file amended tax returns and paid everything he owed the government once he had received the subpoena and was able to determine, with the help of lawyers and accountants but without the financial documents in Sweeton's possession, his taxable income for the multiple years at issue could have tilted the case in his favor. At the very least, it is not "highly probable" that the exclusion of such evidence in these circumstances failed to affect the outcome of the trial. Similarly, the government's comments implying that Evdokimow had not paid his taxes struck at the heart of this defense. Why would an innocent (if naïve) individual who had relied on the experience and expertise of the mastermind of the scheme fail to pay his taxes (which he does not dispute he owes) once the scheme came to light?

Finally, we should not overlook the unfair and even downright impossible position that resulted from the combination of the District Court's evidentiary ruling and the government's closing argument. The District Court granted the government's motion to exclude evidence of the amended tax returns and tax payments. Having succeeded in keeping from the jury evidence of Evdokimow's payment of his tax liability in its entirety, the government then indicated to the jury that Evdokimow still owed it money. In essence, the government was permitted to do what the defendant could not—look to what happened (or did not happen) after the defendant had received notice of the

11

investigation. It then went even further by falsely implying that he had not paid his taxes. As Evdokimow aptly puts it, he "was caught in the perfect storm of these two related trial errors." (Appellant's Reply Brief at 25.)

Accordingly, I would vacate Evdokimow's conviction and remand for a new trial.